JAMESTOWN VILLAGE CONDOMINIUM OWNERS ASSOCIATION, Appellee,

v.

MARKET MEDIA RESEARCH, INC., et al. Appellants.*

[Cite as *Jamestown Village Condo. Owners Assn. v. Market Media Research, Inc.* (1994), 96 Ohio App.3d 678.]

Court of Appeals of Ohio,
Cuyahoga County.

Nos. 64815, 64816, 65272, 66113.

Decided Aug. 4, 1994.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 71 Ohio St.3d 1444, 644 N.E.2d 406.

*John J. Duffy & Associates* and *John J. Duffy,* for appellee.
*Snyder, Neff & Chamberlin* and *Owen C. Neff,* for appellants.

PORTER, Judge.

Defendants-appellants Market Media Research, Inc., et al. ("MMR") in this consolidated appeal asserts error in the trial court's denial of further relief under the declaratory judgment statute (R.C. 2721.09), in the appointment of a receiver, in denying motions to transfer a subsequent case as a related case to the original trial judge, in denying motions to strike affidavits, and in denying a motion to intervene. MMR also challenges the trial court's vacating a stay of proceedings and issuing case management orders while the case is pending on appeal and in overruling motions for sanctions. Plaintiff-appellee Jamestown Village Condominium Owners Association will hereinafter be referred to as "Jamestown." For the reasons hereinafter stated, we affirm in part, dismiss in part and remand for further proceedings.

The complexity of these appeals and the issues they present arise in large part from the fact that a subsequent case (herein "Jamestown III") was assigned on

filing to a different common pleas judge than the judge to whom two earlier cases (Jamestown I and II) were originally assigned and by whom disposition was made. Jamestown III was not identified as a "related case" to the earlier two cases at the time it was filed.

The record below is replete with a dismaying array of motions to compel, to consolidate, to show cause, for sanctions, for protective orders, for default, to strike, to dismiss, and for summary judgment, accompanied by numerous briefs and counter-briefs. The docket for Jamestown III alone consists of eleven pages containing over two hundred entries. Nevertheless, we shall attempt, as briefly as the circumstances permit, to trace the tortured history of these cases in order to address the legal issues that eventually emerge.

The first and second cases (Jamestown I and II) arose out of a dispute over whether or not MMR had purchased a condominium unit from one Stephen Klausman by land contract in 1982 without giving Jamestown notice of Klausman's intention to sell and a first right of refusal in Jamestown to purchase the unit as required by the Declaration of Condominium Ownership. This dispute was the subject of the first two suits.

The first suit in declaratory judgment (Jamestown I) was filed by Jamestown on January 28, 1988 as common pleas No. 143483 and assigned to Judge Michael J. Corrigan, who dismissed the case without prejudice on May 6, 1988, for Jamestown's failure to appear at a status call. The same complaint was subsequently refiled by Jamestown on May 16, 1988 as common pleas No. 149815 (Jamestown II) and reassigned to Judge Corrigan as a related case pursuant to C.P.Sup.R. 4. The record of the earlier case was incorporated and Jamestown I and II were consolidated and disposed of on September 6, 1988 by summary judgment in favor of MMR. For convenience, we will hereinafter refer to the two original cases as "Jamestown II," except as the context otherwise requires.

Jamestown appealed and this court affirmed the summary judgment in *Jamestown Village Condominium Owners Assn. v. Klausman* (Jan. 25, 1990), Cuyahoga App. Nos. 56516 and 56517, unreported, 1990 WL 4473. This court held that the actions of Jamestown, "unrebutted by evidentiary material below, are sufficient to constitute a waiver of the written notice requirement for the contemplated sale of unit 201 [the Klausman unit]." *Id.* at 6–7.

Prior to the filing of Jamestown I and II, in February 1987 a leak in the roof damaged MMR's unit. A dispute arose as to the timeliness of repairs. By May 1987, MMR refused to pay its maintenance fees until the problem was resolved. In June 1987, the roof was replaced and in August the insurer paid MMR's claim for damages by sending a check for $1,582.40 to Jamestown under the loss payable clause in the policy.

By letter dated September 2, 1987, MMR instructed Jamestown to deduct an amount equal to the maintenance fees from May to September 1987, and remit the balance of the insurance proceeds to MMR. This was not done. On September 28, 1987, Jamestown filed a lien against MMR's unit for the delinquent maintenance fees.

While Jamestown II was still pending before Judge Corrigan, on August 5, 1988, Jamestown filed a third suit as common pleas No. 154270 (Jamestown III), which was assigned to Judge Timothy J. McMonagle. The new complaint alleged breach by MMR of the Jamestown Declaration and By–Law provisions which required MMR to pay common maintenance fees on the 201 unit and sought judicial foreclosure of Jamestown's lien for such delinquencies.

Counsel for Jamestown executed a case designation form whereby he certified "that to the best of my knowledge the within case is not related to any now pending or previously filed, except as noted above." No reference was noted to Jamestown II pending before Judge Corrigan.

On September 8, 1988, two days after summary judgment had been granted to MMR in the original cases, MMR moved to consolidate Jamestown III with Jamestown II before Judge Corrigan as a related case. Since notice of appeal had been filed in Jamestown II, Judge Corrigan deferred ruling on the motion to transfer until the appeal was decided. Judge McMonagle overruled that motion on May 19, 1989.

On April 25, 1989, Jamestown moved for appointment of a receiver during the pendency of the Jamestown III foreclosure action. Following briefing and a pretrial conference, over MMR's opposition, Judge McMonagle granted the motion, but the order appointing the receiver was not signed and journalized until March 5, 1990.

On August 22, 1989, Jamestown filed an action in the Rocky River Municipal Court, case No. 89–CVG–1213 (Jamestown IV), seeking forcible entry and detainer against MMR, which Judge Maureen A. Gravens found, in part, to "concern the same subject matter as previously raised by plaintiff" in Jamestown III, then pending before Judge McMonagle. Judge Gravens transferred the case to the common pleas court, by order dated November 9, 1989. Upon transfer, the case was assigned to common pleas Judge Patricia A. Cleary and designated case No. 180862.

Following this court's affirmance of summary judgment in Jamestown II, on February 7, 1990, MMR moved Judge Corrigan to consolidate Jamestown II with Jamestown III, pending before Judge McMonagle. Judge Corrigan denied the motion on July 10, 1990 and marked his order "Final." No Civ.R. 54(B) legend ("no just cause for delay") was journalized.

On April 23, 1990, MMR filed a motion to vacate order appointing receiver and to reassign Jamestown III to Judge Corrigan pursuant to C.P.Sup.R. 4. This was eventually overruled by Judge McMonagle on February 18, 1993.

On June 29, 1990, Jamestown filed a motion for summary judgment on its foreclosure action. The mortgagee Dollar Bank did the same on its cross-claim on September 10, 1990.

On August 21, 1990, MMR filed for a writ of prohibition in the Ohio Supreme Court contesting Judge McMonagle's jurisdiction to proceed with Jamestown III and claiming the issues were *res judicata* by reason of Jamestown's failure to include its foreclosure claims in the Jamestown II action. The Ohio Supreme Court dismissed the petition on October 10, 1990. A petition for writ of certiorari to the United States Supreme Court was denied on April 20, 1992.

On August 13, 1992, MMR filed a petition for further relief pursuant to R.C. 2721.09 in Jamestown II, seeking an order that Jamestown III was *res judicata* because of Jamestown's failure to include its foreclosure claim in the Jamestown II litigation. Following briefing and hearing, it was denied by Judge Corrigan on October 14, 1992.

From this order MMR has filed a timely appeal.

We will address MMR's assignments of error in the order asserted.

"I. The trial court erred in denying Market/Media's petition for further relief under R.C. 2721.09. (*Jamestown I*, case no. 143483, doc. 25; *Jamestown II*, case no. 149815, doc. 28)."

Of the thirty-three issues MMR has enumerated in these consolidated appeals for our consideration, fourteen are referenced to Assignment of Error I. MMR argues that in denying its petition for further relief under R.C. 2721.09, Judge Corrigan erred: (1) in refusing to hold that Jamestown III was *res judicata* by reason of the final judgment in Jamestown II; (2) by refusing to hold that he had exclusive jurisdiction to adjudicate the Jamestown III issues by reason of his jurisdiction over the original suits, Jamestown I and II, rendering Judge McMonagle's rulings void or a nullity; (3) by failing to find Jamestown in violation of his discovery order of May 26, 1988 and R.C. 2921.12 for concealing evidence and misleading the court on material issues; (4) by not finding Jamestown had acted with unclean hands and in bad faith by defrauding the court by not identifying Jamestown I and II as related cases when it filed its Jamestown III case designation form; and (5) by not awarding MMR its attorney fees, costs and expenses in the face of Jamestown's alleged misconduct.

■ The key issue is whether Jamestown III is *res judicata* because the claims asserted therein for delinquent maintenance fees against MMR, arising

out of the condominium contract, existed prior to the filing of the declaratory judgment action in Jamestown I and II. MMR argues that Jamestown was bound to bring all the claims arising out of the contract in its original action or be forever barred from asserting them. It invokes the familiar rule of claim preclusion which holds that "an existing final judgment or decree between parties to litigation is conclusive as to all claims which were or *might have been* litigated in a first lawsuit." (Emphasis in original.) *Natl. Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178, 1180, citing and quoting *Rogers v. Whitehall* (1986), 25 Ohio St.3d 67, 69, 25 OBR 89, 90, 494 N.E.2d 1387, ˜1388. After an independent review of the legal precedents, we are constrained to disagree with MMR's position.

◼ While MMR correctly states the general rule, it has no application in declaratory judgment actions except to the extent a specific litigated issue is determined. In other words, a declaratory judgment is not *res judicata* on an issue or claim not determined thereby even though it was known and existing at the time of the original action. This principle was recently recognized in *Ketchel v. Bainbridge Twp.* (1992), 79 Ohio App.3d 174, 177, 607 N.E.2d 22, 24:

"Turning to the first assignment of error, we must decide whether the trial court erred in granting summary judgment against appellants' coercive and [*sic*] damage causes of action based on *res judicata.*

"Appellants cite the Restatement of the Law 2d, Judgments (1982), Section 33, Comment *c,* for the proposition that claim preclusion, as a branch of *res judicata,* does not apply where a party files a second action after litigating a claim for simple declaratory relief.

"When a plaintiff seeks solely declaratory relief, the weight of authority does not view him as seeking to enforce a claim against the defendant. * * *

" * * * *

" * * * [A] declaratory action determines only what it actually decides and does not have a claim preclusive effect on other contentions that might have been advanced. Restatement of the Law 2d, Judgments (1982) 337, Section 33, Comment *c.* * * *."

The court went on to find that the declaratory relief prayed for in the original action was not expansive enough to encompass the relief requested in the second action and "following the Restatement of Judgments 2d, appellants' claim in *Ketchel II* would not be barred by claim preclusion." *Id.* at 178, 607 N.E.2d at 25.

The rationale behind making declaratory judgment proceedings an exception to the general issue preclusion rule is well stated as follows:

"In at least two aspects the rules of *res judicata* in regard to declaratory judgments differ from those applicable to other judgments: (1) a plaintiff who has asked solely for declaratory relief is not precluded by a judgment in his favor from maintaining a subsequent action on the same cause of action for coercive relief; and (2) in those jurisdictions in which, irrespective of whether or not the same cause of action is involved in different proceedings, a judgment is *res judicata* even on those matters which could have been, but were not, litigated and determined thereby, this rule has been held not applicable to a declaratory judgment.

" * * *

"Where a plaintiff seeks a declaratory judgment, he is not seeking to enforce a claim against the defendant, but rather a judicial declaration as to the existence and effect of a relation between him and the defendant; the effect of a declaratory judgment, therefore, unlike a judgment for the payment of money, is not to merge a cause of action in the judgment or to bar it, but to make *res judicata* the matters declared by the judgment, thus precluding the parties to the litigation from relitigating these matters. Restatement, Judgments Comment b, to § 77. In fact the Uniform Declaratory Judgment Act expressly provides in § 8 that further relief based on a declaratory judgment or decree may be granted whenever necessary or proper." Extent to Which Principles of Res Judicata are Applicable to Judgments in Actions for Declaratory Relief (1950), 10 A.L.R.2d 782, 787.

The principles enumerated have been followed in a number of cases: See *Empire Fire & Marine Ins. Co. v. J. Transport* (C.A. 11, 1989), 880 F.2d 1291, 1297 ("[T]he parties did not actually litigate the issue of reimbursement in the prior declaratory action, [therefore] the parties are not barred by the doctrine of *res judicata* from litigating this claim [now]."); *Lube 495, Inc. v. Jiffy Lube Intern, Inc.* (D.Mass.1993), 813 F.Supp. 100, 112 ("[T]he doctrine of claim preclusion cannot be invoked to bar claims which could have been raised in a prior declaratory judgment action but were not."); *Carver v. Heikkila* (S.D.1991), 465 N.W.2d 183, 186 (Although plaintiff could have raised whether the wells were part of the seller operations in its first declaratory action, it was not precluded by *res judicata* from raising the issue in its second action.); *Radkay v. Confalone* (1990), 133 N.H. 294, 298, 575 A.2d 355, 358 ("Plaintiff who has successfully obtained a judgment for declaratory relief is not precluded from maintaining a subsequent action for coercive relief."); *Cooke v. Gaidry* (1949), 309 Ky. 727, 731, 218 S.W.2d 960, 962 ("Generally a former judgment is conclusive not only of all matters actually adjudicated thereby, but in addition, as to all matters which could have been presented for adjudication * * * [b]ut suits for declaratory judgments do not fall within this rule.").

We find these authorities persuasive and hold that the final judgment in Jamestown II affirmed by this court did not preclude Jamestown from instituting a separate foreclosure action for delinquent maintenance fees in Jamestown III.

In a post-argument brief filed by MMR, it is argued that Jamestown II was not a declaratory judgment action at all, but a complaint for breach of a "recorded covenant" in which Jamestown was seeking specific performance of the first right of refusal provision. If it had merit, MMR's theory would bring the general rule of *res judicata* back into play. We disagree. The complaint for declaratory judgment invoked the Declaratory Judgment Act (R.C. Chapter 2721), prayed that the court declare the transfer to Klausman null and void and that Jamestown had the first right of refusal, but sought no monetary damages. Thus, the action was for a declaratory judgment—nothing more. We also note the anomalous position of MMR now arguing that Jamestown's action was never really a declaratory judgment action while at the same time arguing that the trial court erred in depriving MMR of further relief under R.C. 2721.09 of the Declaratory Judgment Act.

Moreover, we do not find that Judge Corrigan had the exclusive jurisdiction to determine the delinquent fee issues asserted in Jamestown III because of his disposition of Jamestown II. What we have stated previously established Jamestown's right to file a separate action to recover the delinquent fees. It is an independent and separate claim not litigated or raised in Jamestown II. Although it is highly questionable whether Jamestown III is *not* a "related case" to Jamestown I and II in common parlance as the term is used in the case designation form, we find nothing in Loc.R. 15 (assignment of civil cases for trial) or C.P.Sup.R. 4 (assignment system) which compels the assignment of a related case so designated to the original trial judge. Further, "[p]ursuant to Common Pleas Sup.R. 3(B) and 4, power to assign or transfer cases is reposed in the administrative judge of each multi-judge division of the court of common pleas." *Heinz v. Corrigan* (Mar. 6, 1986), Cuyahoga App. No. 50285, unreported, 1986 WL 2944; see, also, *Berger v. Berger* (1981), 3 Ohio App.3d 125, 130, 3 OBR 141, 146–147, 443 N.E.2d 1375, 1381. Therefore, the motion to transfer was improperly filed with Judge McMonagle and Judge Corrigan, as they did not have the authority to transfer the cases.

Under Civ.R. 42 and Loc.R. 15(H) cases with common questions of law and fact can be consolidated. However, the decision whether to consolidate is within the lower court's discretion. *BancOhio Natl. Bank v. Schieisswohl* (1988), 51 Ohio App.3d 130, 132, 554 N.E.2d 1362, 1364–1365; *Fair v. School Emp. Retirement Sys.* (1975), 44 Ohio App.2d 115, 120, 73 O.O.2d 101, 103–104, 335 N.E.2d 868, 872. It is for the court to determine if there is sufficient commonality of issues and parties to warrant consolidation. *Waterman v. Kitrick* (1990), 60

Ohio App.3d 7, 14, 572 N.E.2d 250, 256–257. Furthermore, a denial of a motion to consolidate is not a final appealable order. *State ex rel. Eberling v. Nugent* (1988), 40 Ohio St.3d 129, 130, 532 N.E.2d 104, 105 ("Clearly, the denial of a motion to consolidate is not a judgment * * * [n]or, in our view, is it a final order."). Since the issue of the delinquent fees has nothing in common with Jamestown's first right of refusal, we do not find the trial court abused its discretion in denying MMR's motion to consolidate the cases or to transfer them to one judge or the other.

■ · MMR's argument that Jamestown's claims in Jamestown III are barred by the doctrine of "unclean hands" is also without merit. This is a maxim of equity which provides that "he who comes into equity must come with clean hands." *Marinaro v. Major Indoor Soccer League* (1991), 81 Ohio App.3d 42, 45, 610 N.E.2d 450, 452. In Jamestown III, Jamestown is not attempting to invoke the court's equitable powers, but is instead invoking a statutory remedy of foreclosure on a lien.

The remaining issues raised pursuant to this assignment of error fell within the sound discretion of the trial judge. Whether Jamestown violated discovery orders, made misleading disclosures, suppressed evidence or acted with fraudulent intent is a matter best left to the discretion of the trial judge who has been responsible for this unfortunate litigation since its outset. *Royal Indemn. v. J.C. Penney Co., Inc.* (1986), 27 Ohio St.3d 31, 35, 27 OBR 447, 450, 501 N.E.2d 617, 621 ("A trial court has wide discretion in the exercise of its duty to supervise members of the bar appearing before it."); *Russo v. Goodyear Tire & Rubber Co.* (1987), 36 Ohio App.3d 175, 178, 521 N.E.2d 1116, 1120 ("It is exclusively within the trial court's discretion to determine the * * * particular infraction committed."); *Internatl. Merchandising Corp. v. Mearns* (1989), 63 Ohio App.3d 32, 36, 577 N.E.2d 1128, 1131 ("A trial court's decision in a contempt proceeding will not be reversed in the absence of a showing of an abuse of discretion."); *State ex rel. Fant v. Sykes* (1987), 29 Ohio St.3d 65, 29 OBR 446, 505 N.E.2d 966 ("The decision to impose sanctions pursuant to Civ.R. 11 lies within the discretion of the trial court.").

The same is true as to whether or not MMR was entitled to an award of attorney fees or costs for any alleged misconduct of Jamestown or its attorney. *Rossi v. Corning Glass Works* (1992), 84 Ohio App.3d 22, 25, 616 N.E.2d 258, 260; *Painter v. Midland Steel Products Co.* (1989), 65 Ohio App.3d 273, 281, 583 N.E.2d 1018, 1023; *Szabo v. Estate of George Kurelov* (Nov. 21, 1990), Cuyahoga App. Nos. 59490, 60113, unreported, 1990 WL 180642.

In any event, on a review of the record we find no abuse of discretion which would justify overturning the trial court's rulings on the issues raised in Jamestown II.

This assignment of error is overruled.

"II. The trial court erred in granting Jamestown's motion to appoint a receiver under R.C. 5311.18. (*Jamestown III*, case no. 154270, docs. 92 and 46A)."

"III. The trial court erred in denying Market/Media's motions to vacate the appointment of the receiver and to transfer case nos. 154270 and 180862 to the judge who had exclusive jurisdiction of the subject matter. (*Jamestown II*, case no. 149815, doc. 21; *Jamestown III*, case no. 154270, docs. 18 and 26a)."

 We find that MMR's appeal regarding the court's granting Jamestown's motion to appoint a receiver is untimely. The trial court granted the motion on March 5, 1990, and MMR did not appeal this ruling until March 1993. The court's appointment of a receiver is a final appealable order. *Forest City Invest. Co. v. Haas* (1924), 110 Ohio St. 188, 143 N.E. 549, paragraph one of the syllabus; *Metro. Life Ins. v. Begin* (1938), 59 Ohio App. 5, 7, 12 O.O. 337, 338, 16 N.E.2d 1015, 1016; *Morris v. Invest. Life Ins. Co.* (1965), 1 Ohio App.2d 330, 332, 30 O.O.2d 341, 342, 204 N.E.2d 550, 552–553; *Equity Centers Dev. Co. v. S. Coast Centers, Inc.* (1992), 83 Ohio App.3d 643, 645, 615 N.E.2d 662, 663, fn. 1. Therefore, the court's ruling had to be appealed within thirty days of March 5, 1990. See App.R. 4. Pursuant to *Stiver v. Stiver* (1939), 63 Ohio App. 327, 17 O.O. 96, 26 N.E.2d 595, it is the "order" itself and not when the bond was posted which determines the finality:

"It is argued that * * * the order of appointment did not take effect until the receiver was properly qualified. This position is not tenable." *Id.* at 328, 17 O.O. at 97, 26 N.E.2d at 596.

Notwithstanding the timeliness obstacle, we note that what we have held previously establishes that Judge McMonagle had jurisdiction to address and determine the issues in Jamestown III as they arose. Therefore, MMR's attack on Judge McMonagle's power to appoint a receiver based on events which occurred in Jamestown II must fail. These arguments (*res judicata*, fraudulent case designation form, unclean hands, abatement, judicial waiver and estoppel, *res judicata*, sham and frivolous pleading, issues preclusion) did not prevent Judge McMonagle from determining whether a receiver was appropriate under R.C. 5311.18.

 It is well established that the trial court is vested with the sound discretion to appoint a receiver. *State ex rel. Celebrezze v. Gibbs* (1991), 60 Ohio St.3d 69, 73, 573 N.E.2d 62, 66. The appointment will not be disturbed unless there is a clear abuse of sound judicial discretion. *Id.*

■ The statute governing liens for nonpayment of common expenses under condominium law, R.C. 5311.18, provides in part as follows:

"(A) Unless otherwise provided by the declaration or bylaws, the unit owners association shall have a lien upon the estate or interest of the owner in any unit and the appurtenant percentage of interest in the common areas and facilities for the payment of the portion of the common expenses chargeable against the unit that remains unpaid for ten days after the portion has become due and payable. The lien is effective on the date a certificate of lien is filed for record in the office of the recorder of the county or counties in which the condominium property is situated pursuant to authorization given by the board of managers. * * *

"(B) The lien provided for by division (A) of this section is prior to any lien or encumbrance subsequently arising or created, except liens for real estate taxes and assessments and liens of first mortgages that have been filed for record, and may be foreclosed in the same manner as a mortgage on real property in an action brought on behalf of the unit owners association by its president or other chief officer pursuant to authority given to him by the board of managers. In the foreclosure action, the owner of the unit affected shall be required to pay a reasonable rental for the unit during the pendency of the action, and the plaintiff in the action is entitled to the appointment of a receiver to collect the rental. In the foreclosure action, the unit owners association, or its agent, duly authorized by action of its board of managers, is entitled, unless prohibited by the declaration or bylaws, to become a purchaser at the foreclosure sale."

It would appear beyond dispute that in Jamestown III "the foreclosure action, the owner of the unit affected [MMR] shall be required to pay a reasonable rental for the unit during the pendency of the action and the plaintiff in the action [Jamestown] *is entitled to the appointment of a receiver* to collect the rental." This provision was also included in Jamestown Village Condominiums' "Declaration of Condominium Ownership" at paragraph 14(E), where it states, "In any such foreclosure action, the owner or owners of the family unit affected shall be required to pay a reasonable rental for such family unit during the pendency of such action, and the plaintiff in such action shall be entitled to the appointment of a receiver to collect the same."

As previously noted, we find that MMR's unclean hands argument has no validity here because the appointment of a receiver is a statutory right, not an equitable right predicated on equitable maxims. *S. Main Akron, Inc. v. Lynn Realty, Inc.* (App.1951), 62 Ohio Law Abs. 103, 112, 106 N.E.2d 325, 331; *Michigan State Industries v. Fischer Hardware Co.* (1934), 50 Ohio App. 153, 155, 2 O.O. 171, 172, 197 N.E. 785, 786.

We also find no merit to MMR's argument that the receiver was appointed without opportunity for a hearing. Quite the contrary, MMR had notice and a full opportunity to be heard.

As a review of the record indicates, Jamestown filed its motion for appointment of a receiver on April 25, 1989; on May 9, 1989, MMR filed a memorandum in opposition; on May 22, 1989, the trial court scheduled the motion for a hearing on June 7, 1989, which it subsequently converted to a pretrial; MMR was represented at the pretrial in chambers on June 7, 1989, by its sole shareholder, Robert Rhodes; MMR filed a hearing brief on June 8, 1989; and Jamestown's attorney submitted a journal entry which was signed by the judge and journalized on March 5, 1990.

MMR had several opportunities to be "heard" by the court. The courts have consistently held that every presumption attends to the validity and regularity of the order appointing a receiver. *Tonti v. Tonti* (App.1951), 66 Ohio Law Abs. 356, 358, 118 N.E.2d 200, 202; *In re Dissolution of Charles F. Johnson, Inc.* (App.1936), 22 Ohio Law Abs. 534, 537. This presumption was supported by the record below.

MMR cites case law regarding the appointment of a receiver under the general receivership statute, R.C. 2735.01. This statute provides that "[a] receiver may be appointed * * *," indicating it is within the trial court's discretion. However, the condominium statute at issue here is R.C. 5311.18(B), which states that: "In the foreclosure action, the owner of the unit affected shall be required to pay a reasonable rental for the unit during the pendency of the action, and the plaintiff in the action is entitled to the appointment of a receiver to collect the rental." The specific statute is mandatory. We find no error in the proceedings or in the appointment of the receiver herein. In any event, under Loc.R. 11, "Motions, in general, shall be submitted and determined upon the motion papers." Oral argument or a formal hearing is a matter within the discretion of the trial court. *Id.*

MMR also challenges the trial court's denial of its motion to vacate the appointment of a receiver and Judge McMonagle's refusal to transfer the Jamestown III case to Judge Corrigan. These motions do not present final appealable orders and will not be addressed.

As the court stated in *Morris v. Invest. Life Ins. Co. of Am.* (1965), 1 Ohio App.2d 330, 332, 30 O.O.2d 341, 343, 204 N.E.2d 550, 552–553: "The general rule that an order denying vacation of a receivership is not a final order is well established in Ohio." This rule is explained in 4 Ohio Jurisprudence 3d (1978), 237–238, Appellate Review, Section 99:

"[A]n order overruling a motion to remove a receiver is held not a final appealable order affecting the substantial rights of the parties, to which an appeal may be prosecuted * * *. It in no manner adjudicates any of the issues, it does not change the status quo, nor does it affect any substantial right of the litigants."

We have previously discussed the denial of MMR's transfer motions and found no error in their denial. In any event, denial of a motion to transfer to another judge or consolidate with other cases is not a final appealable order. *State ex rel. Eberling v. Nugent, supra.* These assignments of error are overruled in part and dismissed in part.

"IV. The trial court erred in denying or ignoring Market/Media's motions to strike conflicting, hearsay affidavits in which Jamestown officers testified what their reviews of material accounting records 'showed,' while suppressing the actual records in violation of court orders to produce and R.C. 2921.12. (*Jamestown I,* case no. 14383, doc. 24; *Jamestown II,* case no. 149815, doc. 27; *Jamestown III,* case no. 154270, docs. 27 and 107)."

This assignment of error does not present a final appealable order. The contested affidavits deal with issues related to Jamestown's foreclosure action. As discussed in Assignment of Error I, the declaratory judgment action and foreclosure action are distinct, separate claims. Therefore, reference to the foreclosure action in the "Petition for Further Relief" was inappropriate. Because Jamestown and Dollar Bank both have pending motions for summary judgment in case No. 154270, we cannot address MMR's arguments related to the foreclosure action.

Furthermore, we cannot address the affidavit attached to Jamestown's motion to appoint a receiver, as we held above that appeal of the appointment was not timely brought. We have also noted that, based on R.C. 5311.18, the trial court did not abuse its discretion in appointing the receiver. This assignment of error is dismissed.

"V. The trial court erred in issuing new case management orders requiring further proceedings on the merits during the pendency of an appeal (App. no. 65272) in which the trial court's jurisdiction of the subject matter is directly at issue."

"VI. The trial court erred in issuing new case management orders requiring further proceedings on the merits during the pendency of an appeal in which the court of appeals is asked to decide that defenses raised to the order on appeal constitute absolute bars *in limine* to the granting of *any* relief to the plaintiff."

As stated above, there has been no final judgment entered in case No. 154270, as Jamestown and Dollar Bank filed motions for summary judgment which are still pending.

The case management orders that MMR contends were incorrectly issued pertain to the briefing schedule for the outstanding motions for summary judgment. Therefore, these assignments of error relate to interlocutory matters.

Furthermore, in *Yee v. Erie Cty. Sheriff's Dept.* (1990), 51 Ohio St.3d 43, 44, 553 N.E.2d 1354, 1355, the Ohio Supreme Court held that "[w]hen a case has been appealed, the trial court retains all jurisdiction not inconsistent with the court of appeals' jurisdiction to reverse, modify, or affirm the judgment." Since there is no final judgment in case No. 154270, this court does not have jurisdiction to reverse, modify, or affirm the judgment. Therefore, pursuant to App.R. 12(A), this portion of MMR's appeal is dismissed.

"VII. The trial court, which had inherent power to determine its own jurisdiction of the subject matter in the first instance, erred in overruling defendant's third motion for sanctions while the plaintiff remained in contempt of the court's June 6, 1989, discovery order based solely on false statements to the court by plaintiff's counsel that the discovery order had been or would be obeyed."

"VIII. The trial court erred in overruling the motion to strike the untimely appearance of third-party defendant Frank J. Vokoun and enter judgment by default against him as a sanction for corruptly attempting to put himself and his assets beyond the reach of the court after seeking and obtaining leave to file an out-of-rule pleading."

Because there is no final judgment in case No. 154270, each of the rulings on these assignments of error is interlocutory.

Discovery orders are not final appealable orders. *Kennedy v. Chalfin* (1974), 38 Ohio St.2d 85, 67 O.O.2d 90, 310 N.E.2d 233 (trial court's denial of a motion for discovery sanctions is an interlocutory order and is not subject to immediate appellate review); *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 57, 63 O.O.2d 88, 90, 295 N.E.2d 659, 660–661 ("A discovery order is not subject to immediate review and an abuse of discretion does not of itself render final an interlocutory order.").

Likewise, a trial court's denial of a motion for default judgment is not a final order. *Orr v. Shoemaker* (1914), 2 Ohio App. 323, 325. The court's denial of the motion neither determines the action nor prevents a judgment; therefore, the denial of the motion is merely interlocutory. *Westside Church of God v. Hawkins* (Oct. 28, 1986), Montgomery App. No. 9763, unreported, 1986 WL 12359; *Kondrat v. Mitrovich* (Mar. 29, 1985), Lake App. No. 9–185, unreported; *Withrow v. Beerman* (Dec. 23, 1985), Butler App. No. 85–02–016, unreported, 1985 WL 4640.

Because these assignments of error involve non-final appealable orders, this portion of MMR's appeal must be dismissed.

"IX. The trial court erred in denying the motion of Owen C. Neff to intervene. (*Jamestown III,* case no. 154270, doc. 26a)."

This assignment of error may be addressed even though there is no final judgment in case No. 154270, because the denial of a motion to intervene pursuant to Civ.R. 24(A) is a final appealable order. *Blackburn v. Hamoudi* (1986), 29 Ohio App.3d 350, 352, 29 OBR 479, 480, 505 N.E.2d 1010, 1012; *Likover v. Cleveland* (1978), 60 Ohio App.2d 154, 155, 14 O.O.3d 125, 126, 396 N.E.2d 491, 492.

The trial court gave no reason for overruling attorney Owen Neff's motion to intervene. The standard of review on such a motion is abuse of discretion. *Morris v. Invest. Life Ins. Co. of Am.* (1966), 6 Ohio St.2d 185, 35 O.O.2d 304, 217 N.E.2d 202, paragraph two of syllabus.

The essential elements in demonstrating a right to intervene pursuant to Civ.R. 24(A)(2) are as follows:

"[T]he application must be timely and the applicant must show three conditions exist:

" ' * * * (1) that he claims an interest relating to the property or transaction which is the subject of the action; (2) that he is [so] situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest; and (3) that the existing parties do not adequately represent his interest.' (Footnote omitted.) McCormac, Ohio Civil Rules Practice (1970) 80–81, Section 4.36." *Fouche v. Denihan* (1990), 66 Ohio App.3d 120, 122, 583 N.E.2d 457, 459. "Failure to meet any one of the elements in Civ.R. 24(A) will result in denial of the right to intervene." *Fairview Gen. Hosp. v. Fletcher* (1990), 69 Ohio App.3d 827, 831, 591 N.E.2d 1312, 1314.

Intervenor Neff meets the requirements of Civ.R. 24(A). He does have an interest in the property as MMR executed a promissory note for $20,000 to Neff for attorney fees, which was secured by a mortgage on the subject property; if he is not permitted to intervene, his ability to recover his portion of the foreclosure proceeds may be impaired; and, since the other parties' interests are senior or potentially adverse, they do not adequately represent his interests. See *Sharp v. Kuhn* (Oct. 4, 1978), Fayette App. No. 78 CA 10, unreported.

There appears to be no ethical problem in allowing Neff to collect his attorney fees from the foreclosure action. DR 5–103(A) states as follows:

"DR 5–103. AVOIDING ACQUISITION OF INTEREST IN LITIGATION

"(A) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except that he may:

"(1) Acquire a lien granted by law to secure his fee or expenses."

Since the court did not give a reason for denying Neff's motion to intervene, and we find no support for denying the motion, we hold that the court abused its discretion in not allowing Neff to intervene.

This assignment of error is sustained.

Summarizing, appeal Nos. 64815 and 64816, which relate to Assignments of Error I and IV, are affirmed in part and dismissed in part; appeal No. 65272, which relates to Assignments of Error II, III and IX, is reversed in part and dismissed in part; and appeal No. 66113, which relates to Assignments of Error V, VI, VII and VIII, is dismissed. The cases are remanded for further proceedings consistent with this opinion.

*Judgment accordingly.*

PATTON, P.J., and WEAVER, J., concur.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1995), 71 Ohio St.3d 1443, 644 N.E.2d 406.