JOURNAL ENTRY AND OPINION.
{¶ 1} Plaintiff-appellant, Kenneth F. Seminatore, appeals the decision of the Cuyahoga County Common Pleas Court that entered judgment against him following a jury's verdict in favor of defendants-appellees, Climaco, Climaco, Lefkowitz and Garofoli, Company, LPA, John R. Climaco, Michael L. Climaco, Paul S. Lefkowitz, Dennis R. Wilcox, John A. Peca and Anthony J. Garofoli, on appellant's claims for breach of fiduciary duty and promissory estoppel. For the reasons that follow, we affirm.
 {¶ 2} The record reveals that appellant joined defendant-appellee, Climaco, Climaco, Lefkowitz and Garofoli, LPA ("CCLG") in 1976 and remained in its employ until he was terminated in April 1997. Sometime in 1983, appellant met Jack Burry, who, at the time, was president and CEO of Blue Cross and Blue Shield of Ohio ("BCBS"). Shortly thereafter, BCBS became a rather lucrative client of CCLG, requiring the establishment of a dedicated service unit within CCLG. That unit employed approximately half of the firm's 60 attorneys and generated nearly $1 million in fees per month. It was undisputed that appellant was the principal in charge of this unit.
 {¶ 3} In September 1988, Burry, on behalf of BCBS, executed a document agreeing to pay appellant "$75,000 per month for 12 months" in order to "assure continuity of [appellant's] personal advice, counsel and advocacy" in the event the attorney-client relationship between appellant and BCBS terminated. The agreement was addressed to appellant at his home and provided that appellant could "direct payment to his current firm or otherwise, as you see fit." John Climaco, the founding principal of CCLG, testified that he was unaware of this agreement until approximately 1994 when a federal grand jury requested all of the firm's contracts with BCBS when the latter was under investigation. Although John Climaco testified that he and appellant discussed the document, John Climaco expressed no concern at the time because he knew that any fees generated by appellant would come to the firm.
 {¶ 4} CCLG's representation of BCBS continued. Sometime in 1996, negotiations were under way for Columbia Healthcare to acquire BCBS. Appellant was involved in these negotiations. Suffice it to say that the proposed acquisition of BCBS by Columbia did not receive favorable attention either by the press or the public. One aspect in particular concerned a proposed $3.5 million payment to appellant if the sale was consummated. Appellant testified that he informed John Climaco that BCBS wanted to compensate appellant personally for his "marketing skills" in the form of a "bonus" valued at approximately $2 million. This "bonus" actually was in the form of a non-competition agreement and valued at $3.5 million. John Climaco testified that he was shocked when informed by appellant but, nonetheless, conferred with the other principals and the consensus was to advise appellant "to do what he thinks is right," although at the time they were unaware that appellant had understated the value by $1.5 million. Appellant testified that, in his opinion, it was unlikely that he would receive this money but that he intended to use this proposed agreement as a "bargaining chip." In other words, he was prepared to relinquish the non-competition agreement if necessary to conclude the sale.
 {¶ 5} At the same time that these negotiations were taking place, appellant and CCLG were involved in defending criminal charges against them for violating the requirements for reporting honoraria. Both appellant and CCLG entered pleas of no contest and were fined accordingly. Anticipating media coverage, CCLG prepared a written statement to be given to the press and requested that appellant adhere to that statement. Appellant, nonetheless, included a statement to the effect that "sometimes, in the arena, even successful gladiators get cut."
 {¶ 6} The BCBS/Columbia sale did not take place. On the contrary, a settlement agreement was reached on March 18, 1997 that not only had the effect of preventing the sale, but terminated the legal relationship between appellant and BCBS. Shortly thereafter, on March 27, 1997, appellant made a demand for the payment of funds under the September 1988 agreement and directed that payment be sent to his home address. Upon learning this the next day, John Climaco conferred with the remaining principals and the decision was made to place appellant on an immediate leave of absence. Moreover, the decision was made to remove appellant's name from the name of the firm, which was done that day. Appellant eventually was terminated from CCLG sometime in April 1997.
 {¶ 7} Appellant thereafter filed[1] a six-count complaint against CCLG in its corporate capacity[2] and against individual principal shareholders of CCLG, defendants-appellees, John R. Climaco, Michael L. Climaco, Paul S. Lefkowitz, Dennis R. Wilcox, John A. Peca and Anthony J. Garofoli, alleging (1) breach of contract; (2) breach of fiduciary duty; (3) promissory estoppel; (4) fraud; (5) conversion; and (6) redemption of interest.[3] The allegations stem from appellant's employment relationship with CCLG and the subsequent termination of that relationship.
 {¶ 8} The case proceeded to trial in June 1999 on appellant's claims for breach of contract, breach of fiduciary duty and promissory estoppel. The trial court ultimately directed a verdict on all of appellant's claims against CCLG and the individually named defendants at varying times throughout the trial. On appeal to this court, the trial court's decision to direct a verdict was upheld as to appellant's breach of contract claim, but reversed and remanded for a new trial as to appellant's claims for breach of fiduciary duty and promissory estoppel. See Seminatore v. Climaco, Climaco, Lefkowitz Garofoli, Co., LPA
(Dec. 7, 2000), Cuyahoga App. No. 76658, 2000 Ohio App. Lexis 5732. In particular, this court concluded that the trial court erred in excluding the testimony of Douglas Andrews, a former principal of CCLG, and that of Alan Duvall, appellant's expert on damages. It, therefore, reversed and remanded the case for a new trial. The Ohio Supreme Court declined jurisdiction to further review this decision. See Seminatore v.Climaco, Climaco, Lefkowitz Garofoli, Co., LPA (2001),91 Ohio St.3d 1513.
 {¶ 9} Trial commenced for a second time in April 2002 and was limited to appellant's claims for breach of fiduciary duty and promissory estoppel as stated above. Appellant's theory of the case was that appellees terminated him without just cause and made promises, upon which he justifiably relied, that (1) he would remain employed by CCLG as long as he maintained his law license; and (2) he could not be terminated, nor his compensation modified, without his consent. Appellees, on the other hand, presented evidence demonstrating that (1) appellant was disloyal to CCLG and the individually named principals; (2) this disloyalty constituted just cause for appellant's termination; and (3) no such promises of continued employment were made as asserted by appellant.
 {¶ 10} The jury eventually returned a verdict in favor of all appellees. Appellant is now before this court and assigns four errors for our review.
 I. Jury Interrogatories {¶ 11} In his first assignment of error, appellant contends that the trial court erred when it failed to grant a new trial on his claim for breach of fiduciary duty where there was an inconsistency between the jury's verdict on that issue and the associated interrogatory. Succinctly, the jury returned an interrogatory that stated they found appellees had breached their fiduciary duties to appellant, but returned another interrogatory wherein they found that there was "a legitimate business purpose" for appellant's termination. The jury thereafter entered a general verdict in favor of appellees on appellant's claim for breach of fiduciary duty.
 {¶ 12} Civ.R. 49 governs verdicts and interrogatories to the jury. Subsection (B) of this rule provides, in relevant part:
 {¶ 13} "When the general verdict and the answers are consistent, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When one or more of the answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial."
 {¶ 14} Appellant argues that the interrogatory finding breach of fiduciary duty is inconsistent with the interrogatory finding just cause for appellant's termination and, therefore, these interrogatories are inconsistent with the verdict finding in favor of appellees' on his claim for breach of fiduciary duty. We disagree.
 {¶ 15} It is undisputed that the parties stood in fiduciary relationship to one another and each owed fiduciary duties to the others. These duties included the obligation to use the utmost good faith and integrity in their dealing with one another. See Arpadi v. First MSPCorp. (1994), 68 Ohio St.3d 453, paragraph two of the syllabus; Crosbyv. Beam (1989), 47 Ohio St.3d 105, 108.
 {¶ 16} Contrary to appellant's arguments to this court, appellant's complaint seeks redress for breaches of fiduciary duty in addition to wrongful termination. One such breach alleged was that John and Michael Climaco were the only principals who had access to CCLG's financial information and, as a result, appellant suffered a loss of his equity interest in the firm. Although it does not appear from the record that appellant pursued any claim for loss of past income as a result of this alleged breach at trial, appellant did present evidence of the manner in which the individual principals conducted themselves during this time that justifiably could have constituted breaches of fiduciary duty.
 {¶ 17} For example, appellant was excluded in the discussions that led to his leave of absence and eventual termination. John Climaco consulted with all the available principals, except appellant. While appellant was on leave of absence, the name of the firm was changed to exclude his name, implying that the decision to terminate him had already been made. Nothing in the record indicates that appellant had any further communication with the firm until he was notified of his termination. These examples militate against finding that the principals acted in good faith and with integrity toward appellant, thereby justifying that the principals breached their fiduciary duty to appellant.
 {¶ 18} Moreover, we note that the jury interrogatories were approved by all parties. Interrogatory Number 1 specifically instructs the jury that if it found a breach of fiduciary duty, it had to then answer Interrogatory Number 2, which inquired of the jury as to whether it found "a legitimate business purpose" for appellant's termination. Appellant stipulated that "legitimate business purpose" was equivalent to "just cause." Interrogatory Number 2 then instructed the jury that if it found that there was a legitimate business purpose for the termination, they were to mark the general verdict form in favor the appellees. Even though we conclude that there could be a finding of a breach of fiduciary duty and a finding of just cause, any perceived problem associated with these interrogatories and their respective instructions should have been addressed prior to presenting them to the jury.
 {¶ 19} Appellant's first assignment of error is not well taken and is overruled.
 II. Jury Instructions {¶ 20} In his second assignment of error, appellant contends that the trial court erroneously instructed the jury on the doctrines of clean hands and at-will employment as they pertain to his claims for breach of fiduciary duty and promissory estoppel, respectively. Appellees maintain that they were entitled to these instructions and, alternatively, that appellant waived any error associated with these instructions when he failed to object to their inclusion.
 {¶ 21} We note initially that appellant voiced his objection to the clean hands instruction both before the instructions were given to the jury and immediately after so as to preserve this error for our review. Appellant did not object to the instruction on at-will employment, however, until the jury retired to deliberate. Civ.R. 51(A) provides that "on appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Under these circumstances, this portion of appellant's second assignment of error cannot be considered on appeal absent plain error. Galmish v. Cicchini
(2000), 90 Ohio St.3d 22, 32; Goldfuss v. Davidson (1997),79 Ohio St.3d 116, 121.
 A. Instruction on Doctrine of Clean Hands {¶ 22} In its instructions to the jury, the trial court stated as follows:
 {¶ 23} "[Appellant's] next claim is that the individual [appellees] owed him fiduciary duties that prevented [appellant] from being terminated without a legitimate business purpose.
 {¶ 24} "The [appellees] have asserted that [appellant's termination was motivated by legitimate purposes and that the termination was, therefore, proper despite existence of fiduciary duty.
 {¶ 25} "[Appellees] also assert that [appellant] is precluded from recovering from breach of fiduciary duty under the doctrine of `Unclean Hands,' which will be defined for you. You will determine whether [appellant] is prohibited from recovering on this claim pursuant to the doctrine of `Unclean Hands.'"
 {¶ 26} The doctrine of clean hands is based on the maxim of equity that provides "he who comes into equity must come with clean hands."Marinaro v. Major Indoor Soccer League (1991), 81 Ohio App.3d 42, 45. Appellant argues that an instruction based on this doctrine is unwarranted because he was not seeking an equitable remedy. See Jamestown VillageCondominium Owners Assn. v. Market Media Research, Inc. (1994),96 Ohio App.3d 678, 688; see, also, Chomczynski v. Cinna Scientific,Inc., 1st Dist. No. C-010170, 2002-Ohio-4605, at ¶ 19. On the contrary, appellant argues that the trial court should have instructed the jury that "the individual [appellees] did owe [appellant] a fiduciary duty which would be breached if he was terminated for anything other than just cause * * *."
 {¶ 27} We note that the trial court did instruct the jury as to the fiduciary duties owed to appellant.
 {¶ 28} "Fiduciary duty. [Appellant] and individual [appellees] are owed each other fiduciary duties because they were shareholders in the [appellant] law firm. That means that the shareholders owed a duty of good faith and loyalty to each other and to the law firm.
 {¶ 29} "Generally, as part of their fiduciary duties, [appellant] and the individual [appellees] had a duty to act in the best interests of the law firm and shareholders overall, rather than their own self-interests.
 {¶ 30} "Legitimate business purpose and business judgment. An employee who is terminated for a legitimate business purpose is not entitled to compensation following his termination."
 {¶ 31} Nonetheless, the court did instruct the jury that if it found a breach of fiduciary duties, they were then to consider whether the doctrine of clean hands prevented appellant from recovering and thereafter defined that doctrine.
 {¶ 32} Continuing, however, the court stated:
 {¶ 33} "If you find that [appellant's] termination was not for a legitimate business purpose and that his claim is not barred by unclean hands, you will decide by the greater weight of the evidence what amount of money will fairly and reasonably compensate [appellant] for [appellees'] breach of fiduciary duty, as resulting in a natural and usual way from the breach."
 {¶ 34} As can be surmised from the excerpted instruction above, the trial court did instruct the jury that a finding of a legitimate business purpose for appellant's termination would bar recovery on the latter's breach of fiduciary duty claim. Even if we were to find that the instruction on the doctrine of clean hands to be erroneous, we cannot say that its inclusion prejudiced the substantial rights of appellant. This instruction was given in addition to the instruction on legitimate business purpose and, therefore, is harmless. See Civ.R. 61.
 A. At-Will Employment Instruction {¶ 1} In its instructions to the jury, the trial court stated as follows:
 {¶ 2} "[Appellant's] first claim is for promissory estoppel. [Appellant] alleges that the [CCLG] made an enforceable promise of lifetime employment. Based on this alleged promise, [appellant] claims that [CCLG] did not have a right to terminate him unless it had just cause."
 {¶ 3} Continuing, the court stated:
 {¶ 4} "[CCLG] denies that it promised [appellant] lifetime employment. Moreover, [CCLG] claims that [appellant] was terminated for just cause, which justified [appellant's] termination even if he had been promised lifetime employment."
 {¶ 5} The court thereafter instructed the jury regarding at-will employment as follows:
 {¶ 6} "Under the law, unless there is a contractual agreement to the contrary, the relationship between an employee and his employer is `Employment At-Will.' That means that either party is free to terminate the employment relationship at anytime and for any reason.
 {¶ 7} "Where an employee has no contract for a definite term of employment, the law recognizes a presumption that the employment relationship is terminable at-will. This presumption can be overcome only if the terms of a contract clearly show that the parties intended to create some other employment relationship.
 {¶ 8} "As a consequence, you are instructed that an employment contract which does not specify the length of employment is terminable at-will unless the parties entered a contract which expressly provided otherwise.
 {¶ 9} "Standing alone, praise regarding job performance and discussion of future career opportunities will not change the employment at-will relationship. Demonstration of [detrimental] reliance on specific promises of job security can create an exception to the Employment At-Will Doctrine."
 {¶ 10} As discussed previously, we review the propriety of this instruction for plain error only. Discussing plain error in a civil context, the Goldfuss court stated:
 {¶ 11} "Although in criminal cases `plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court,' Crim.R. 52(B), no analogous provision exists in the Rules of Civil Procedure. The plain error doctrine originated as a criminal law concept. In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." (Citations omitted). Id. At 122.
 {¶ 12} As in Goldfuss, this case does not present exceptional circumstances. As emphasized by the Ohio Supreme Court, the plain error doctrine is "limited to the extremely rare case involving exceptional circumstances where the error, left unobjected to at the trial court, rises to the level of challenging the legitimacy of the underlying judicial process itself." Id. We see nothing so egregious that brings into question the legitimacy of the judicial process so as to invoke this doctrine.
 {¶ 13} Appellant's second assignment of error is not well taken and is overruled.
 I. Evidentiary Rulings {¶ 1} In his third assignment of error, appellant contends that the trial court made several errors associated with the exclusion of evidence.
 {¶ 2} It is well established that a trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice. Rigby v. LakeCty. (1991), 58 Ohio St.3d 269, 271. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219. Error predicated on an evidentiary ruling does not warrant reversal of the trial court's judgment unless the court's actions were inconsistent with substantial justice and affected the substantial rights of the parties. Evid.R. 103(A); Civ.R. 61.
 A. CCLG's History and Practice Style {¶ 3} Appellant contends that the trial court improperly excluded evidence of CCLG's history and aggressive practice style. Had this evidence been admitted, appellant argues, it would have been apparent to the jury that he was terminated because of the loss of BCBS as a client and, therefore, without just cause.
 {¶ 4} Appellant references a proffer of evidence he made regarding excluded exhibits and testimony that apparently was the subject of a motion in limine. Yet there is no discussion within the proffer as to what precisely the excluded exhibits consisted of and they were not made part of the record for our review. We, nonetheless, find that considerable evidence was admitted regarding CCLG's practice style.
 {¶ 5} Testimony was adduced that CCLG had successfully represented some very high profile and controversial clients, including the International Brotherhood of Teamsters and its president, Jackie Presser. To be sure, excerpts of the firm's brochure were read into the record and the brochure itself admitted as an exhibit. One such excerpt was as follows:
 {¶ 6} "Respected and feared by its peers, the firm has won many cases and forestalled many more by out-thinking, out-maneuvering and simply out-fighting the opposition."
 {¶ 7} Notwithstanding, merely because appellant's practice style may have emulated that of the firm's principals does not negate or otherwise excuse appellant's fiduciary obligations owed to the remaining principals. Appellant claims he was only conducting himself in the same manner as other principals in the firm, none of whom were sanctioned for their conduct. The record, however, does not indicate that any of the other principals sought to individually enrich themselves at the expense of the firm, nor act in direct contravention of a firm directive.
 {¶ 8} We see no error by the trial court as pertains to this issue.
 A. Conversation between Appellant and Mario Ciano {¶ 1} Appellant attempted to introduce statements made to him by Mario Ciano, an attorney representing CCLG in a prior case between a former CCLG employee and CCLG.[4] This attorney reportedly made statements to appellant supporting his assertion that a principal at CCLG could only lose his position with the firm if that principal lost his law license. It is appellant's position that the inconsistent findings on his breach of fiduciary claim could have been avoided had this testimony been admitted.
 {¶ 2} In Section I, we discussed appellant's inconsistency argument and determined that no such inconsistency exists. This assignment of error is therefore moot and need not be discussed. See App.R. 12(A)(1)(c).
 C. Testimony Confirming Foregone Opportunities {¶ 3} Appellant contends that the trial court improperly excluded evidence of foregone employment opportunities as part of his promissory estoppel claim. We disagree.
 {¶ 4} The record reveals that appellant testified, without objection, to several lost opportunities, including (1) establishing his own firm; (2) working at Baker Hostetler; and (3) serving as chief operating officer of Blue Cross. Appellant's references to the transcript wherein objections were sustained and a proffer of evidence was entered, pertain to the income derived from the Blue Cross account and the manner in which it was invested. Appellant presents no argument as to how this testimony relates to testimony regarding foregone employment opportunities and we can ascertain no such relationship.
 {¶ 5} We see no error by the trial court as pertains to this issue.
 D. Testimony of Charles Kettlewell {¶ 6} Appellant contends that the trial court improperly excluded the testimony of his expert witness, Charles Kettlewell ("Kettlewell"), an attorney with expertise in the area of professional ethics. If permitted to testify, Kettlewell would have testified that various statements made by appellant were not violative of the Ohio Code of Professional Responsibility. The particular statement reviewed by Kettlewell was a statement made by appellant to the effect that "sometimes, in the arena, even successful gladiators get cut." Appellees objected to the admission of Kettlewell's report and testimony on the basis that appellant failed to comply with Loc.R. 21.1 and, even if there was compliance, Kettlewell's testimony would have been irrelevant.
 {¶ 7} It is undisputed that appellant did not furnish Kettlewell's report until two weeks prior to trial. It is also undisputed that this failure, technically, is a violation of Loc.R. 21.1, which requires that expert reports be exchanged at least 30 days prior to trial. Appellant argues, however, that appellees suffered no prejudice from the submission of the late report because appellant informed them of appellant's intent to call Kettlewell as an expert witness prior to this time. Notwithstanding any alleged violation of Loc.R. 21.1, we find that the trial court properly excluded Kettlewell's testimony because it would have been irrelevant.
 {¶ 8} It appears from the record that, in February 1996, CCLG and appellant were both indicted for two counts of falsification, in violation of R.C. 2921.13. The conduct giving rise to these indictments involved the reporting of honoraria allegedly received in 1992 and 1993. An investigation ensued sometime in 1994 and the aforementioned indictments followed thereafter. Appellant and CCLG eventually pleaded no contest, both were convicted and fined accordingly. See, generally, State v. Climaco, Climaco, Seminatore, Lefkowitz Garofoli, Co., LPA (1999), 85 Ohio St.3d 582. The "gladiator" statement at issue was apparently made to the media after appellant entered his plea.
 {¶ 9} John Climaco testified that the firm's decision to plead no contest was thoroughly discussed as was its anticipated response to the media. It is true that appellant prepared a draft statement that included the "gladiator" statement at issue. This statement, however, was excised from the official written statement approved for release by the firm. John Climaco testified that he specifically requested, and appellant agreed, to remain silent in response to media inquiry and allow the prepared written statement to speak for itself.
 {¶ 10} Notwithstanding, appellant made the "gladiator" statement when questioned by the media after he entered his plea. This apparent act of defiance was one of the reasons espoused by CCLG, and the individual principals-appellees, that served as a basis for the firm's decision to terminate appellant. It was the act of defiance, not whether appellant violated any disciplinary rule, that served as a basis to terminate appellant. Consequently, the testimony of Kettlewell would have been irrelevant and the trial court did not err in excluding this evidence.
 E. CCLG's Tax Records {¶ 11} Appellant contends that the trial court erred when it improperly excluded the firm's tax records from the date of appellant's termination until the date of trial.
 {¶ 12} These records pertain to the issue of damages and, in light of our disposition of appellant's first, second and fourth assignments of error, we need not discuss this assigned error. See App.R. 12(A)(1)(c).
 {¶ 13} Appellant's third assignment of error is not well taken and is overruled.
 IV. Trial Court Bias {¶ 14} In his fourth assignment of error, appellant contends that the trial court committed prejudicial error by repeatedly demonstrating to the jury its bias in favor of appellees and that, as such, he should have been granted a new trial under Civ.R. 59(A)(1). Civ.R. 59(A)(1) provides that a trial court may grant a new trial when the record supports an "irregularity in the proceedings of the court * * * or abuse of discretion, by which an aggrieved party was prevented from having a fair trial." As stated previously, the term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore, 5 Ohio St.3d at 219. A reviewing court must look at the totality of the circumstances in determining whether a trial court acted unreasonably, arbitrarily or unconscionably.
 {¶ 15} Appellant claims that the irregularity in this case concerns the trial judge's inappropriate conduct in introducing defendant-appellee, Anthony Garofoli ("Garofoli"), as well as other gratuitous remarks made by the trial judge that demonstrated favor to the appellees.
 {¶ 16} As pertains to Garofoli, the trial court judge stated:
 {¶ 17} "Ladies and gentlemen of the jury, before we get back, you recall that earlier during the trial you heard the name of Mr. Anthony Garofoli. And it's a pleasure, because he has had the opportunity to introduce me so many times in my life.
 {¶ 18} "So now I will get a chance to do the same to him. And I would like to introduce to you Mr. Anthony Garofoli, who is one of the Defendants in this case."
 {¶ 19} Appellant made no objection to this comment. Notwithstanding the lack of objection, however, we note the trial judge demonstrated a particular familiarity with this defendant. The judge's position of prominence certainly could have relayed the impression to the jury that Garofoli had done nothing improper because the judge holds this particular defendant in such high esteem.
 {¶ 20} Nonetheless, we have read the entire record in this case and, viewing the record as a whole, find that appellant was not denied a fair trial. This particular comment by the trial judge was made during the second day of a seven-day trial spanning more than a week. Garofoli testified on the second last day of trial, which was seven days after trial began and six days after the comment was made. The trial judge demonstrated no further familiarity with this particular defendant nor with any of the other defendants. Without more, we do not find that this comment, or the offering a glass of water to a witness, is conclusive evidence of partiality. We are confined to reviewing the record before us and, therefore, cannot address appellant's arguments regarding the trial court judge's demeanor, facial expressions and other non-verbal conduct that was not made part of the record. Nor is it possible for us to review any discussions that may have occurred in chambers without the benefit of a stenographer. Reviewing the record before us in its totality, we cannot say that appellant was denied a fair trial because of the actions and conduct of the trial court judge. If appellant perceived that he was receiving less than a fair trial because of the trial judge's partiality, his recourse would have been to enter an objection and thereafter file an affidavit of prejudice with the Ohio Supreme Court as authorized by R.C. 2937.20. This he did not do and he cannot now be heard to complain about the unfair and biased conduct of the trial court judge.
 {¶ 21} Appellant's fourth assignment of error is not well taken and is overruled.
Judgment affirmed.
JAMES J. SWEENEY, P.J. AND SEAN C. GALLAGHER, J., CONCUR
[1] Appellant originally filed his complaint in Franklin County in October 1997. It was eventually transferred to Cuyahoga County and filed there in April 1998.
[2] CCLG was initially formed as a partnership and retained that form of ownership even when it organized as a professional corporation under R.C. Chapter 1785. Apparently, the partnership holds the firm's lease and other property interests while the corporation provides legal services as authorized under the statute.
[3] Appellant's complaint also included CCSLG I and II as named defendants. According to appellant's complaint, these entities are or were development companies affiliated with CCLG of which appellant had an investment interest. Claims against these defendants, however, were dismissed prior to trial.
[4] Apparently Thomas Colaluca, a former employee, brought suit against the law firm after his employment relationship with the firm ended.