OPINION *Page 2 
{¶ 1} Intervenor-Appellant, Fred Charton[1] appeals the November 2, 2007 judgment entry of the Stark County Court of Common Pleas to grant summary judgment in favor of Relators-Appellees, Republic Services of Ohio II, LLC, et al. and Respondents-Appellees, Pike Township Board of Trustees.
 STATEMENT OF THE FACTS AND THE CASE {¶ 2} This Court has previously documented a majority of the underlying facts and procedural history of this case in State ex rel.Republic Servs. of Ohio v. Pike Twp. Bd. of Trustees, Case Nos. 2006CA00153 and 2006CA00172, 2007-Ohio-2086 (hereinafter "Republic2007"). In that case we stated:
 {¶ 3} "Appellee Republic Services of Ohio LLC (hereinafter `Republic'), is the owner of certain real property in Pike Township, Stark County, Ohio, upon approximately 100 acres of which it operates a licensed sanitary landfill (Countywide Landfill). At the time, Republic acquired said property (1984), it was zoned R-1 and R-2, and the landfill operated under a conditional use permit. In 1991, Pike Township Board of Trustees (hereinafter `Pike') amended its zoning resolution to conditionally permit sanitary landfills in I-1 or I-2 districts only. At that time, Republic's operation was a prior non-conforming use. In 1996, Pike rezoned all of Republic's property (575 acres) to General I-2. In 2000, Pike amended its Zoning Resolution again, placing limits and restrictions on sanitary landfills.
 {¶ 4} "In May 2004, Republic applied for an expansion of its conditionally permitted use to increase its operating size from one hundred (100) acres to two *Page 3 
hundred fifty-eight (258) acres. The Pike Township Board of Zoning Appeals (hereinafter `BZA'), after public hearing, denied Republic's application on July 14, 2004. In its findings of fact for so doing, the BZA stated that the evidence did not support certain portions of the Zoning Resolution. Four (4) of the six (6) portions cited were new provisions adopted in 2000.
 {¶ 5} "Republic filed an appeal, upon law and fact, of the BZA's decision, pursuant to R.C. 2506, on August 10, 2004. That case, 2004-CV-02656, was assigned to Judge Lioi. On August 12, 2004, Republic filed a Complaint for Declaratory Judgment, Mandamus and Other Relief against Pike Township, the Pike Township Board of Trustees, and the Pike Township Zoning Inspector (hereinafter collectively `Pike'). That Complaint, the underlying case at bar, 2004-CV-02705, was assigned to Judge Sinclair. The Complaint prayed for declaratory judgment that 1) Republic's use of the Property, including the Expansion Area, for the Countywide facility is a public utility and therefore exempt from the Township Zoning Resolution under Ohio Revised Code Section 519.211, and that no conditional use permit or other approval from the Township for such expansion is required; 2) that the Township Zoning Resolution, including those provisions governing conditional use permits for solid waste disposal facilities, as applied to prevent the proposed expansion of the Countywide facility are arbitrary, capricious and unreasonable as applied to the Property and do not advance the health, safety or morals of the Township and, therefore, are unconstitutional, and that Republic is entitled to expand the Countywide facility; or, in the alternative, 3) that the Township Zoning Resolution, including those provisions governing conditional use permits for solid waste disposal facilities, is preempted by *Page 4 
Revised Code Section 3734.02 and rules promulgated thereunder to the extent it effectively excludes any new or additional landfills from the Township.
 {¶ 6} "Republic also sought an order directing and requiring the Township Zoning Inspector to issue or cause to be issued any zoning certificates required for the expansion of the Countywide facility on the Property in the event the Court granted declaratory relief as described above.
 {¶ 7} "Finally, Republic also sought a writ of mandamus compelling the Township to immediately commence appropriation proceedings to determine the amount of compensation due Republic for the permanent or temporary taking of the Expansion Area portion of the Property.
 {¶ 8} "On September 13, 2004, Appellee Pike filed their Answer denying Republic's claims.
 {¶ 9} "On September 28, 2004, after giving proper legal notice of a special meeting to discuss pending litigation with counsel, Pike and counsel did so in executive session. As a result of extensive negotiations between counsel for the parties, a settlement was reached and that settlement was approved in public session.
 {¶ 10} "In the Spring of 2006, during discovery in this case, its was found that, unknown to Pike or its counsel, the doors to the Stark County Office Building are locked at 5:00 p.m. Pike did not return to public session until after 6:00 p.m.
 {¶ 11} "On September 29, 2004, seven weeks after the action was commenced, the Court entered a Settlement Agreement/Consent Judgment, executed by both Republic and Pike, finding and declaring that the Township Zoning Resolution provisions governing the issuance of conditional use permits for solid waste disposal *Page 5 
facilities to the Property that precluded its use for an expanded solid waste disposal facility `are invalid as applied to the Property,' and that Republic `is entitled to expand its facility to its full capacity of 258 acres' (Settlement Agreement/Consent Judgment, ¶ 1); ordering the zoning inspector to issue a zoning certificate for that expansion (Id., ¶ 2); ordering Republic to contribute an amount that could exceed $10,000,000, depending on the level of participation by the federal government, for the construction of a ramp and alternate roadway intended to redirect traffic to and from the Property (Id., ¶¶ 3-4); limiting the hours of operation for the facility (Id., ¶ 6); noting that Republic's claims for damages against the Township were withdrawn (Id., ¶ 7); and declaring that the Settlement Agreement/Consent Judgment "resolves all remaining claims by . . . Republic against the Township." (Id.). The Court retained jurisdiction to enforce the terms of the Settlement Agreement/Consent Judgment (Id., ¶ 9), and the parties expressly waived their appeal rights. (Id., ¶ 10).
 {¶ 12} "Nine days after the Settlement Agreement/Consent Judgment was entered, on October 8, 2004, Appellant asked the Court to vacate the Settlement Agreement/Consent Judgment and to permit him to intervene in the action as a party defendant/respondent." Republic 2007, supra, ¶¶ 3-12.
 {¶ 13} Appellant Fred Charton owned several parcels of real property adjoining the Countywide Landfill facility. He did not reside on the properties, but leased one of the parcels to a couple for residential and farming purposes. Fred Charton's daughter, Brenda Charton, resided in the original family home on another parcel owned by Fred Charton. *Page 6 
 {¶ 14} "On October 29, 2004, Appellant filed a Notice of Appeal of said Settlement Agreement/Consent Judgment Entry, which was dismissed sua sponte by this Court on December 2, 2004 (Case No. 2004CA00331). On January 5, 2005, Judge Sinclair denied Appellant's Motion to Intervene. On January 13, 2005, Appellant's Civ. R. 60(B) Motion to Vacate was also denied. The Appellant filed a Notice of Appeal on February 7, 2005, Case No. 2005CA00045.
 {¶ 15} "This Court reversed and remanded Case No. 2005CA00045. In its December 19, 2005 Nunc Pro Tunc Opinion, this Court stated at Paragraph 53 et seq:
 {¶ 16} "`We are not addressing the prior order of the trial court which denied the motion to intervene as untimely as such case had been closed, but, rather, this appeal is from the court's decision to deny the intervention motion and thereby the 60(B) motion on the basis of Judge Lioi's ruling in Common Pleas Case No. 2004CV02656, which decision we have reversed in the companion appeal in 2004CA00395.
 {¶ 17} "`As the basis for the ruling denying intervention has been reversed on appeal, this case is remanded to the trial court for a determination on the merits of Appellant Charton's motion to intervene and, if granted, his 60(B) motion.
 {¶ 18} "`This case is reversed and remanded for appropriate procedure in accordance therewith.'
 {¶ 19} "Judge Sinclair permitted Charton to intervene as a party defendant/respondent and vacated the 2004 Consent Decree. Charton filed his Answer, Counterclaim as to Republic, and Cross-Claims to Pike. On March 13, 2006, Republic filed an Amended Complaint (having received leave to do so from the Court). *Page 7 
This Complaint added a new allegation: that by the very terms of Pike's 2000 Zoning Resolution, Republic was entitled to fully expand its operations into the Expansion Area.
 {¶ 20} "The appropriate answers, etc. were filed. Extensive depositions and other discovery were conducted. Circumstances and the enactment of new legislation (R.C. 505.07) since September 2004 resulted in a new proposed consent decree. The change in circumstances included the Stark-Wayne-Tuscarawas Solid Waste District resolving to remove the three million dollars it had previously set aside to pay for construction of the ramp that was part of a condition precedent in the 2004 Consent Decree. Also, although the federal government earmarked the three million dollars it was to contribute to the cost of building the Interstate 77/Gracemont entrance and exit ramps, that money had not been appropriated. Therefore, Republic offered a new settlement agreement to Pike, which stated that if either the Solid Waste District's money was not reinstated or if the federal money was never appropriated, or both, Republic would pay the full cost of construction of said ramp.
 {¶ 21} "Following the procedures of R.C. 505.07, which permit townships to settle litigation `notwithstanding any contrary provision in another section of the Revised Code, Section 519.12 of the Revised Code, or any vote of the electors on a petition for zoning referendum. . .' Pike and Republic provided the required notices; Pike held the required meeting on March 28, 2006, and Pike resolved at the end of that public meeting to approve the proposed settlement agreement and ask the Court to approve same at the scheduled March 31, 2006 hearing. Both Pike and Republic moved the Court to approve the proposed agreement. *Page 8 
 {¶ 22} "After a daylong hearing on March 31, 2006, in which Republic and Pike made statements through counsel, and Charton was permitted to call witnesses and present other evidence, Judge Sinclair ordered briefs on the fairness and reasonableness of the settlement agreement between Republic and Pike." Republic 2007, supra, ¶¶ 13-21.
 {¶ 23} Charton filed an Amended Answer, Counterclaim and Crossclaim on April 4, 2006. Charton's amended counterclaim against Republic consisted of two counts. Count I sought a declaratory judgment that the expansion of the Countywide operations beyond the approximately 100 acres as set forth in the conditional use permit violated Pike's Zoning Resolution, and demanded an injunction against such violation. In Count II, Charton alleged Republic's operation of Countywide constituted a nuisance for which Charton sought damages and injunctive relief. Charton's crossclaim against Pike was based upon allegations of "Sunshine Law" violations that occurred during the special meeting held by Pike on September 28, 2004.
 {¶ 24} "On May 12, 2006, Judge Sinclair issued a Judgment Entry finding `based upon all the evidence presented' that the proposed agreement is fair and reasonable and approved it. On May 23, 2006, the Settlement Agreement/Consent Judgment was filed, as to Republic and Pike." Republic 2007, supra, ¶ 21.
 {¶ 25} Republic moved for summary judgment as to Charton's amended counterclaim on May 25, 2006. Pike filed its motion for summary judgment as to Charton's amended crossclaim on May 31, 2006. The trial court set the matter for a non-oral hearing on June 9, 2006, but the matter was stayed based upon Charton's *Page 9 
appeal of the trial court's decision to approve the Settlement Agreement/Consent Judgment on June 20, 2006.
 {¶ 26} In Republic 2007 issued April 30, 2007, this Court affirmed the trial court's approval of the Settlement Agreement/Consent Judgment. Charton appealed our decision to the Ohio Supreme Court, which denied jurisdiction and remanded the case to the trial court for further consideration. See State ex rel. Republic Servs. of Ohio II, LLC v. Bd.of Trustees of Pike Twp., 115 Ohio St.3d 1422, 2007-Ohio-5056,874 N.E.2d 538.
 {¶ 27} On November 2, 2007, the trial court granted the motions for summary judgment filed by Republic and Pike. It is from this judgment Charton now appeals.
 {¶ 28} Charton raises eight Assignments of Error:
 {¶ 29} "I. THE TRIAL COURT'S FINDING AND DETERMINATION THAT THE NUISANCE CONDITIONS ALLEGED AND COMPLAINED OF BY THE INTERVENING DEFENDANT/APPELLANT-FRED CHARTON IN HIS COUNTER-CLAIM FOR NUISANCE AND DAMAGES AGAINST THE PLAINTIFF-REPUBLIC SERVICES OF OHIO II, LLC, BEYOND ANY GENUINE DISPUTE, CONSTITUTE A "PERMANENT NUISANCE" AS OPPOSED TO A "CONTINUING NUISANCE" AND THAT THE DEFENDANT/APPELLANT-FRED CHARTON IS BARRED FROM BRINGING HIS COUNTER-CLAIM FOR NUISANCE AND DAMAGES BY THE STATUTE OF LIMITATIONS, IS ERRONEOUS, UNSUPPORTED BY THE RECORD AND CONTRARY TO LAW.
 {¶ 30} "II. THE TRIAL COURT'S FINDING THAT THE ALLEGATIONS CONTAINED IN THE INTERVENING DEFENDANT/APPELLANT-FRED CHARTON'S *Page 10 
COUNTER-CLAIM (COUNT TWO) AGAINST THE PLAINTIFF-REPUBLIC SERVICES ARE INSUFFICIENT TO SUPPORT A VIABLE ACTION FOR NUISANCE AGAINST THE PLAINTIFF-REPUBLIC SERVICES AND THE COURT'S CONCLUSION THAT SUCH FINDING CONSTITUTES GROUNDS FOR DISMISSAL OF FRED CHARTON'S COUNTER-CLAIM, WERE AND ARE ERRONEOUS, UNSUPPORTED BY THE RECORD AND CONTRARY TO LAW.
 {¶ 31} "III. THE TRIAL COURT'S FINDING THAT THE EVIDENCE CONTAINED IN THE RECORD IN SUPPORT OF THE APPELLANT-FRED CHARTON' (SIC) COUNTER-CLAIM (COUNT TWO) BROUGHT AGAINST THE PLAINTIFF-REPUBLIC SERVICES FOR NUISANCE AND THE RECOVERY OF DAMAGES RESULTING THEREFROM IS, AS A MATTER OF LAW, INSUFFICIENT TO SUPPORT ANY VIABLE ACTION FOR ANY FORM OF NUISANCE CLAIM, WAS AND IS ERRONEOUS, UNSUPPORTED BY THE RECORD AND CONTRARY TO LAW.
 {¶ 32} "IV. THE TRIAL COURT'S ACTIONS IN FINDING THAT THE ONLY FORM OR KIND OF NUISANCE FOR WHICH THE APPELLANT-FRED CHARTON COULD HAVE AN ACTIONABLE COUNTER-CLAIM FOR NUISANCE AND DAMAGES OR OTHER RELIEF AGAINST THE PLAINTIFF-REPUBLIC SERVICES WOULD BE FOR A QUALIFIED PRIVATE NUISANCE AND IN EXCLUDING THE POSSIBILITY OF RECOVERY FOR OTHER COMMON LAW NUISANCE OR FOR STATUTORY PUBLIC OR PRIVATE NUISANCE UNDER THE PROVISIONS OF OHIO REVISED CODE § 3734.10 AS AMENDED AND § 3745-15-07 OF OHIO ADMINISTRATIVE CODE, WAS AND IS ERRONEOUS, UNSUPPORTED BY THE RECORD, AND CONTRARY TO LAW. *Page 11 
 {¶ 33} "V. THE TRIAL COURT'S FINDING THAT THERE IS NO EVIDENCE IN THE RECORD SHOWING THAT THE APPELLANT-FRED CHARTON HAS INCURRED ANY LEGALLY COGNIZABLE DAMAGE OR INJURY AS A RESULT OF THE ALLEGED NUISANCE CONDITIONS AND OPERATIONS BEING CONDUCTED AND MAINTAINED BY THE PLAINTIFF-REPUBLIC SERVICES UPON ITS COUNTYWIDE LANDFILL PREMISES AND THE TRIAL COURT'S FURTHER CONSEQUENT FINDING THAT THE DEFENDANT/APPELLANT-FRED CHARTON CANNOT DEMONSTRATE ANY FACTUAL DISPUTE AS TO THIS ESSENTIAL ELEMENT THEREBY REQUIRING THE GRANTING OF SUMMARY JUDGMENT UPON THIS ISSUE, WAS AND IS ERRONEOUS, UNSUPPORTED BY THE RECORD AND CONTRARY TO LAW.
 {¶ 34} "VI. THE TRIAL COURT'S DECISION GRANTING SUMMARY JUDGMENT DISMISSING THE APPELLANT-FRED CHARTON'S COUNTER-CLAIM (COUNT ONE) SEEKING A DECLARATORY JUDGMENT DETERMINING AND DECLARING THAT THE PIKE TOWNSHIP ZONING CODE PROVISIONS REQUIRING A CONDITIONAL USE PERMIT FOR EXPANSION OF REPUBLIC SERVICES' COUNTYWIDE LANDFILL ARE VALID AND CONSTITUTIONAL AND FURTHER SEEKING A DETERMINATION AND DECLARATION THAT THE PRESENTLY ON-GOING EXPANSION OF REPUBLIC SERVICES' COUNTYWIDE LANDFILL IS IN VIOLATION OF THE PIKE TOWNSHIP ZONING CODE AND FURTHER SEEKING AN INJUNCTION PREVENTING FURTHER EXPANSION OF SAID LANDFILL AS BEING IN VIOLATION OF THE TOWNSHIP ZONING LAWS, WAS *Page 12 
AND IS ERRONEOUS, UNSUPPORTED BY THE FACTUAL RECORD AND CONTRARY TO LAW.
 {¶ 35} VII. THE TRIAL COURT'S DECISION GRANTING SUMMARY JUDGMENT DISMISSING THE APPELLANT-FRED CHARTON'S AMENDED CROSS-CLAIM AGAINST THE PIKE TOWNSHIP TRUSTEES SEEKING A DECLARATORY JUDGMENT FINDING THAT THE ACTIONS OF THE PIKE TOWNSHIP TRUSTEES IN AUTHORIZING AND ENTERING INTO AN AGREED CONSENT JUDGMENT WITH REPUBLIC SERVICES PROVIDING FOR THE INVALIDATION OF PROVISIONS OF PIKE TOWNSHIP ZONING CODE AS APPLIED TO REPUBLIC SERVICES' COUNTYWIDE LANDFILL AND IN AUTHORIZING EXPANSION OF COUNTYWIDE LANDFILL WERE IN VIOLATION OF THE OHIO OPEN MEETINGS LAWS (SECTION 121.22 O.R.C.) AND WERE ALSO AGAINST PUBLIC POLICY, ULTRAVIRES AND OTHERWISE CONTRARY TO LAW AND ACCORDINGLY INVALID AND VOID AND FURTHER SEEKING A DETERMINATION AND DECLARATION THAT ALL ACTIONS TAKEN PURSUANT TO SUCH INVALID AND VOID AUTHORIZATION OF THE TOWNSHIP TRUSTEES (INCLUDING THE INITIAL AGREED CONSENT JUDGMENT AND ALSO THE SUBSEQUENTLY RE-AUTHORIZED AGREED CONSENT JUDGMENT ENTERED INTO BETWEEN REPUBLIC SERVICES AND THE PIKE TOWNSHIP TRUSTEES) ARE ALSO INVALID AND VOID AND OF NO FORCE AND EFFECT AND FURTHER SEEKING INJUNCTIVE OR OTHER RELIEF, WAS AND IS ERRONEOUS, UNSUPPORTED BY THE RECORD AND CONTRARY TO LAW.
 {¶ 36} "VIII. THAT THE DECISION OF THE TRIAL COURT DISMISSING ALL COUNTS OF THE INTERVENING DEFENDANT/APPELLANT-FRED CHARTON'S *Page 13 
AMENDED COUNTER-CLAIM AGAINST REPUBLIC SERVICES OF OHIO II, LLC AND ALSO DISMISSING THE INTERVENING DEFENDANT/APPELLANT-FRED CHARTON'S AMENDED CROSS-CLAIM AGAINST THE PIKE TOWNSHIP TRUSTEES, WAS AND IS OTHERWISE UNSUPPORTED BY THE EVIDENTIARY RECORD AND CONTRARY TO LAW."
 Standard of Review {¶ 37} We will first address the standard of review applicable to all of Charton's Assignments of Error. Summary Judgment motions are to be resolved in light of the dictates of Civ. R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in State ex rel. Zimmerman v.Tompkins, 75 Ohio St.3d 447, 448, 1996-Ohio-211:
 {¶ 38} "Civ. R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex. rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511,628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."
 {¶ 39} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35. *Page 14 
 I., II., III., IV., and V. {¶ 40} In his first, second, third, fourth, and fifth Assignments of Error, Charton argues the trial court erred in granting summary judgment in favor of Republic as to Count II of his counterclaim alleging nuisance. We disagree.
 {¶ 41} Charton alleges in Count II of his counterclaim against Republic that by Republic's actions in constructing, developing and operating and now expanding the Countywide landfill facility, it has created conditions on the premises that have and continue to adversely affect the use, enjoyment and value of his property. The conditions created by Republic, Charton alleges, have resulted in the emission of offensive odors, dust and noise; flooding and erosion of his property; increased truck traffic and debris from such traffic; and reduction in sunlight to his property. Charton sought injunctive relief and compensatory damages for his claim of nuisance.
 {¶ 42} In Republic's motion for summary judgment before the trial court on Count II of Charton's amended counterclaim, Republic raised two arguments: (1) such claim was barred by the applicable statute of limitations; and (2) even if the claim was timely brought, it should fail as a matter of law. The trial court addressed each of Republic's arguments in its judgment entry granting summary judgment, but the trial court initially found as a matter of law that Charton's claim of nuisance was time-barred by the statute of limitations stated in R.C. 2305.09(D). Charton argues in his first Assignment of Error the trial court erred in its finding; however, upon our de novo review of this issue, we find the trial court was correct in its determination that Charton's claim of nuisance was brought beyond the applicable statute of limitations. *Page 15 
 {¶ 43} Republic argues in its motion for summary judgment and in its brief before this Court that the operation of the Countywide landfill facility constitutes a permanent nuisance under Charton's counterclaim. As such, Republic asserts that the four-year statute of limitations under R.C. 2305.09 ran and accrued prior to Charton's filing of his amended counterclaim for nuisance because the Countywide landfill facility began its operations in the 1991 and Charton testified in deposition that he became aware of the activities giving rise to his cause of action in the mid 1990s. R.C. 2305.09 provides in pertinent part:
 {¶ 44} "An action for any of the following causes shall be brought within four years after the cause thereof accrued:
 {¶ 45} "(A) For trespassing upon real property;
 {¶ 46} "(B) For recovery of personal property, or for taking or detaining it;
 {¶ 47} "* * *
 {¶ 48} "(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, 2305.14 and1304.35 of the Revised Code."
 {¶ 49} Charton conversely contends that his claims of nuisance based upon the operation of the Countywide landfill facility are to be quantified as a continuing nuisance, under which the expiration of the statute of limitations is tolled. Sexton v. Mason, 117 Ohio St.3d 275,2008-Ohio-858, 883 N.E.2d 1013, at ¶ 54.
 {¶ 50} We must determine then, under the Civ. R. 56 evidence provided, whether the operation of the Countywide landfill facility can be considered a permanent or continuing nuisance. Before we being our foray into the law of nuisance, however, this *Page 16 
Court must first note that it has been stated by Professor Keeton in Prosser Keaton, The Law of Torts (5 Ed. 1984) 616, Sec. 86, "[t]here is perhaps no more impenetrable jungle in the entire law than that which surrounds the word `nuisance.'"
 {¶ 51} A permanent nuisance "occurs when the defendant's tortious act has been fully accomplished, but injury to the plaintiff's estate from that act persists in the absence of further conduct by the defendant."Weir v. East Ohio Gas Co., 7th Dist. No. 01 CA 207, 2003-Ohio-1229, ¶ 18. In contrast, a continuing nuisance "results when the defendant's tortious activity is ongoing, perpetually creating fresh violations of the plaintiff's property rights. The damage caused by each fresh violation is an additional cause of action." Id.
 {¶ 52} Trespass, the intentional and unauthorized act of entry upon the land of another, is analogous to the nuisance cause of action, defined as the invasion of public rights or private interest in the use and enjoyment of land. Identical to the nuisance cause of action, trespass is also quantified as continuous or permanent. The Ohio Supreme Court recently had the opportunity to examine the continuous or permanent nature of a trespass action in determining the applicability of R.C. 2305.09. In Sexton v. City of Mason, supra, the Court held, "that a continuous trespass * * * occurs when there is some continuing or ongoing allegedly tortious activity attributable to the defendant. A permanent trespass occurs when the defendant's allegedly tortious act has been fully accomplished." Sexton, 2008-Ohio-858, at ¶ 45.
 {¶ 53} As noted above, Charton alleges in his counterclaim that by Republic's actions in constructing, developing, operating, and now expanding the Countywide Landfill facility, it has created conditions on the premises that have and continue to *Page 17 
adversely affect the use, enjoyment and value of his property. The Countywide landfill facility began its operations in 1991. (Affidavit of Tim Vandersall, ¶¶ 4, 6). Republic acquired the property in 1999 and expanded the landfill operations in 2003 and 2004. Id.
 {¶ 54} During Charton's deposition, he testified regarding the odor, flooding, noise and dust coming from the operation of the landfill as follows:
 {¶ 55} "Q Do you, do you assert, sir — or excuse me. You assert, do you know, that the odor from the landfill is a constant consequence of their operation of this landfill?
 {¶ 56} "A I'd say yes.
 {¶ 57} "Q Would you say, sir, that with respect to dust, the dust is a constant consequence of this landfill?
 {¶ 58} "A I'd say it was.
 {¶ 59} "Q Would you say, sir, that the same with respect to the emission of noise from the landfill, that that, too, is a constant consequence of the operation of the landfill?
 {¶ 60} "A Yes.
 {¶ 61} "Q Sir, would you also say that flooding is similarly a constant consequence of the operation of that landfill?
 {¶ 62} "A It's different respect but it is.
 {¶ 63} "Q Now, let's take these one at a time. What, if anything — do you recall when you first noticed an odor from the landfill? When you did.
 {¶ 64} "A I think it was when I could still walk in. I was an inspector up there and I would go up there and I could smell it." (Charton Depo., pp. 37-38). *Page 18 
 {¶ 65} Charton further testified,
 {¶ 66} "Q * * * When the odors began as a constant consequence of the operation of the landfill?
 {¶ 67} "A I don't know exactly when it was.
 {¶ 68} "Q But is there something that would help you remember when it began as a constant consequence?
 {¶ 69} "A When they started recycling.
 {¶ 70} "Q What do you mean by recycling?
 {¶ 71} "A Running the sewage back through. Recirculating it."
 {¶ 72} "* * *
 {¶ 73} "Q If I were to tell you that that process started in approximately the mid nineties, is that when you are referring to?
 {¶ 74} "A It could well be.
 {¶ 75} " * * *
 {¶ 76} "Q So from the mid nineties, the odor from the landfill became a constant consequence of the operation of the landfill and the recirculation — excuse me, including the recirculation of the leachate; is that correct?
 {¶ 77} "A I'd say yes.
 {¶ 78} "Q Okay. Did the noise about which you complain begin as a constant consequence of the operation of the landfill at the same time, the mid nineties?
 {¶ 79} "A It could well be. It was probably around that time.
 {¶ 80} "Q * * * Did the dust become a problem as a constant consequence of the operation of the landfill at about the same time, the mid 1990's? *Page 19 
 {¶ 81} "A I'd say yes.
 {¶ 82} "* * *
 {¶ 83} "Q * * * The same question with respect to the flooding. Did the flooding become a constant consequence of the operation of the landfill at or about the same time, the mid nineties?
 {¶ 84} "A Well, it would be, again depend on the rainfall." (Charton Depo., pp. 55-56).
 {¶ 85} Brenda Charton, the current resident of one of the properties at issue and daughter of Fred Charton, corroborated Charton's statements as to the dates of the first occurrence of the odor, dust, noise, and flooding. (Brenda Charton Depo., pp. 8-10).
 {¶ 86} Charton argues the nuisance is continuing in that the problems have been reduced or abated, but then followed by recurrence and continuation of the problems. In support of this contention, Charton submitted an affidavit to his response to Republic's motion for summary judgment. The affidavit provides, in part, as follows:
 {¶ 87} "Lastly, the affiant further states that when questioned by counsel for the Plaintiff at the deposition held on or about May 4, 2006, the attorney and not the affiant inserted the word `constant' in a number of questions. This word was selected by the attorney and was not the affiant's word. In this regard, the affiant states that it is not his intention to indicated [sic] that the nuisance problems arising from the Landfill have been constant and fixed. To the contrary, the affiant states that the problems from the landfill, including the dust and odors and other problems, have not been set and fixed but have been changing over time as the [L]andfill has changed and expanded. There have been times that the problems have been reduced or abated but then followed by recurrence *Page 20 
and continuation of the problems. Affiant's intention was to indicate that the problems conditions [sic] coming from the Landfill were problems which are changing, but which are re-current and continuing." (Charton Affidavit ¶ 21).
 {¶ 88} The trial court refused to allow Charton's conflicting affidavit to create a genuine issue of material fact as to the continuing vs. permanent nature of the nuisance pursuant to Byrd v.Smith, 10 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47. InByrd, the Ohio Supreme Court held that, "[a]n affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party, may not, without sufficient explanation, create a genuine issue of material fact to defeat the motion for summary judgment." Id. at paragraph three of the syllabus. Upon review of Charton's deposition testimony and explanation within the affidavit, we agree with the trial court's conclusion that Charton cannot create a genuine issue of material fact as to the constant nature of the nuisance associated with the operation of the landfill.
 {¶ 89} Returning to Charton's argument that his nuisance action is a continuing nuisance and not a permanent nuisance as characterized by Republic, we find this Court has previously examined this issue in regards to the operation of a chicken farm and the associated nuisances of that operation. In Gibson v. Park Poultry, Inc., 5th
Dist. No. 2006CA00296, 2007-Ohio-4248, we held that the nuisances associated with the operation of a neighboring chicken farm were permanent in nature. Park Poultry constructed the poultry barns in 1991 neighboring appellant's property. Appellant argued that the stench and dust created by the barns was recurrent, and came and went in accordance to the growth cycle of the chickens, number of chickens and the *Page 21 
weather. We found that those facts made the nuisance permanent. In making that determination, we found,
 {¶ 90} "In Brown [v. Scioto Cnty. Bd. of Comm. (1993), 87 App.3d704], supra, at 718, our brethren from the Fourth District held the following:
 {¶ 91} "`It has long been the policy of the law to require that actions involving allegations of tortious conduct be asserted promptly.Lawyer's Coop. Publishing Co. v. Muething (1992), 65 Ohio St.3d 273,280, 603 N.E.2d 969, 974. Where a nuisance in the form of air pollution is permanent in that the structure giving rise to the pollution is of a permanent nature, pollution is consistently produced and is not practicably abatable, the statute of limitations begins to run at the time that the nuisance begins or is first noticed, provided that the permanent nature of the nuisance can be ascertained at that time. Annotation, When Statute of Limitations Begins to Run as to Cause of Action for Nuisance Based on Air Pollution (1983), 19 A.L.R.4th 456, 459-460, Section 2[a]; Louisville Brick Tile Co. v. Calmelat (1917), 6 Ohio App. 435. Conversely, where an air pollution nuisance is temporary or recurrent in that the pollution is not constant consequence of the operation or is abatable by reasonable means, a nuisance action can be brought for damages for those injuries incurred within the applicable period, regardless of when the nuisance began. Annotation,supra, at 460, Section 2[a].'
 {¶ 92} "Appellees are in the business of raising chickens for sale and as such, the entire process is composed of various steps. These steps are repeated during each cycle of new chickens, and are part of the chicken farm process. Just as smokestacks take a break during temporary shutdowns for repair, so too does the process of growing *Page 22 
chickens for sale. The process has been in existence since the completion of the poultry barns, and if any nuisance was produced, it began in 1991." Id. at ¶¶ 26-28.
 {¶ 93} Considering the Civ. R. 56 evidence before this Court in a light most favorable to the non-moving party, we find the nuisance alleged in this case to be of a permanent nature. Charton alleged in his counterclaim the alleged nuisances of odor, dust, noise and flooding arose from the operation of the Countywide landfill facility. In his deposition, he testified the occurrences of dust, odor, noise and flooding that interfered with the use and enjoyment of his property had been occurring since the mid 1990s. The Countywide landfill commenced operation in 1991 and is, just as the smokestack belching air pollution and the chicken farm producing its foul odors, a permanent fixture on the landscape of Stark County.
 {¶ 94} Because we find the nuisances complained of in Charton's counterclaim are permanent, the four-year statute of limitations requirements of R.C. 2305.09 are applicable. Accordingly, Charton's counterclaim for nuisance against Republic must fail as a matter of law. Charton's first Assignment of Error is overruled.
 {¶ 95} We find our determination of Charton's first Assignment of Error is dispositive of Charton's remaining Assignments of Error regarding Count II of his counterclaim against Republic. We therefore need not address Charton's second, third, fourth, and fifth Assignments of Error.
 VI. {¶ 96} Charton contends in his sixth Assignment of Error that the trial court erred in granting summary judgment in favor of Republic on Count I of Charton's complaint, which requested declaratory judgment that Pike's zoning resolution regarding the *Page 23 
issuance of conditional use permits was valid. The argument raised by Charton in this Assignment of Error is centered upon the Settlement Agreement/Consent Judgment approved by the trial court on May 23, 2006.
 {¶ 97} As previously noted above, Republic and Pike entered into a Settlement Agreement in March 2006 to resolve the declaratory judgment action pending between those parties. The Settlement Agreement was the subject of an evidentiary hearing on March 31, 2006, after which the trial court approved the Settlement Agreement on May 23, 2006. In the Settlement Agreement/Consent Judgment, the trial court made an amendment to the first sentence of the document as follows, "The parties hereto have agreed to a settlement of all matters involved in this action [as to the parties signing herein only] and hereby consent to the provisions of this Judgment." The Settlement Agreement/Consent Judgment was signed by the trial court and the counsel for Pike and Republic. Still pending before the trial court was Charton's amended counterclaim and crossclaim, which raised issues of declaratory relief and nuisance. Charton, as the intervening party, appealed the trial court's decision to approve the Settlement Agreement/Consent Judgment.
 {¶ 98} The matters alleged in Charton's amended counterclaim and crossclaim were stayed by his appeal of the May 23, 2006 Settlement Agreement/Consent Judgment. We issued our decision on Charton's appeal on April 30, 2007 in Republic 2007, affirming the trial court because we found the trial court had authority to approve the Settlement Agreement/Consent Judgment pursuant to R.C. 505.07. Charton filed a Memorandum of Jurisdiction with the Ohio Supreme Court, seeking a discretionary appeal of our decision in Republic 2007. On October 3, 2007, the Ohio Supreme Court *Page 24 
declined to accept Charton's appeal for review. The case then proceeded in the trial court upon pending summary judgment motions regarding Charton's amended counterclaim and crossclaim.
 {¶ 99} In its judgment entry, the trial court granted summary judgment in favor of Republic on Count I of Charton's amended counterclaim based upon res judicata and the law of the case doctrine pursuant to our ruling in Republic 2007 and the Ohio Supreme Court's denial of jurisdiction. Upon review of the arguments propounded by Charton inRepublic 2007 and our decision therein, we find the trial court was correct in its application of res judicata and the law of the case doctrine to grant judgment to Republic on Count I of Charton's amended counterclaim. In Republic 2007, we found:
 {¶ 100} "Furthermore, we find that the Settlement Agreement/Consent Judgment addressed and settled only those matters between Republic and Pike Township and while Appellant Charton was permitted to intervene in this matter, he does not have the power to prevent to Settlement Agreement/Consent Judgment.
 {¶ 101} "`While intervenor is entitled to present evidence and have its objections heard at hearing on whether to approve consent decree, it does not have power to block decree merely by withholding its consent.' Local No. 93, Intern. Assn of Firefighters, AFL-CIO C.L.C. v.City of Cleveland, 478 U.S. 501, 106 S.Ct. 3063.
 {¶ 102} "We further find that the Settlement Agreement/Consent Judgment did not dispose of Appellant Charton's independent counterclaims of nuisance (against Republic) or Sunshine Law violation (against Pike Township), which remain pending. Neither did the Settlement Agreement/Consent Judgment impose any duties or obligations on Appellant Charton." Republic 2007, ¶¶ 64-66. *Page 25 
 {¶ 103} In Charton's motion for summary judgment before the trial court and his sixth Assignment of Error propounded in the present appeal, he raises issues against the approval of the Settlement Agreement/Consent Judgment already heard and decided by this Court inRepublic 2007. The law of the case doctrine, "* * * establishes that the `decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.'" Pipe Fitters Union LocalNo. 392 v. Kokosing Constr. Co., Inc., 81 Ohio St.3d 214, 218,690 N.E.2d 515, 1998-Ohio-465, quoting Nolan v. Nolan (1984), 11 Ohio St.3d 1, 3,462 N.E.2d 410. Further, "[u]nder the law-of-the-case doctrine, the denial of jurisdiction over a discretionary appeal by this court settles the issue of law appealed." Shaeffer v. Westfield Ins. Co.,110 Ohio St.3d 265, 2006-Ohio-4476, 853 N.E.2d 275, syllabus.
 {¶ 104} As to res judicata, it has been held that, "[a] judgment for or against a governmental body is binding and conclusive as resjudicata on all residents, citizens and taxpayers with respect to matters adjudicated which are of general and public interest."Stromberg v. Board of Educ. (1980), 64 Ohio St.2d 98, 413 N.E.2d 1184.
 {¶ 105} Accordingly, Charton's sixth Assignment of Error is overruled.
 VII. {¶ 106} Charton argues in his seventh Assignment of Error the trial court erred in dismissing his amended crossclaim against Pike seeking a declaratory judgment that the actions of Pike in entering into the Settlement Agreement/Consent Judgment violated the "Sunshine Laws." Charton alleges "Sunshine Law" violations occurred in regards to the original settlement agreement in 2004. The violations allegedly occurred *Page 26 
during a special meeting held by Pike on September 28, 2004 at the Stark County Office Building. At the meeting, a settlement was reached between Republic and Pike and the settlement was approved at public session. The settlement agreement was then approved by the trial court on September 29, 2004. At the time the settlement agreement was approved by the trial court, neither party was aware that the doors to the Stark County Office Building were locked at 5:30 p.m. while the meeting was still in progress. The parties learned of this fact during the discovery process of the present case. However, the trial court vacated its decision to approve the 2004 settlement agreement based upon this Court's ruling inState of Ohio ex rel. Republic Services of Ohio v. Pike Twp. Bd. ofTrustees (Dec. 19, 2005), 5th Dist. No. 2005CA00045.
 {¶ 107} Upon review of Charton's arguments, we agree with the trial court's determination that Charton's remedy was effectuated when the trial court vacated its approval of the 2004 settlement agreement and caused Pike to hold a public meeting in accordance with the law to reach the Settlement Agreement/Consent Judgment in the present case.
 {¶ 108} Charton's seventh Assignment of Error is overruled.
 VIII. {¶ 109} In Charton's final Assignment of Error, he argues the trial court failed to consider all of the evidence submitted in support of his briefs in opposition to Republic and Pike's motions for summary judgment.
 {¶ 110} When a party moves for summary judgment and supports its motion with sufficient evidentiary materials, the party opposing has a reciprocal burden of responding with evidentiary materials which set forth specific facts, demonstrating that a *Page 27 
"genuine triable issue" exists to be litigated for trial. State ex rel.Zimmerman v. Tompkins (1996), 75 Ohio St.3d 447, 449, 663 N.E.2d 639;Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48,51-52, 567 N.E.2d 1027.
 {¶ 111} Civ. R. 56(C) provides an exclusive list of materials a trial court may consider when deciding a motion for summary judgment including pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact. Civ. R. 56; Spier v. American Univ. of the Carribbean (1981),3 Ohio App.3d 28, 443 N.E.2d 1021.
 {¶ 112} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co., (1996), 77 Ohio St.3d 102, 105671 N.E.2d 241.
 {¶ 113} Charton argues the trial court failed to consider all of the evidence before it, thereby prejudicing its finding that there was no dispute of material facts with respect to the motion for summary judgment. We disagree.
 {¶ 114} After reviewing all of the evidence before us, we reach the same conclusions as the trial court for the reasons stated above.
 {¶ 115} Charton's eighth Assignment of Error is overruled. *Page 28 
 {¶ 116} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
[1] Fred Charton passed away on March 2, 2008. Counsel for Fred Charton filed a Notice of Suggestion of Death on March 17, 2008. On June 5, 2008, we granted Appellant's motion to substitute Dallas E. Charton, Executor of the Estate of Fred Charton aka Fredrick A. Charton, as party Appellant.
 By Delaney, J. and Edwards, J. concur. Hoffman, P.J. dissents. *Page 29