CULKAR, Appellant,

v.

VILLAGE OF BROOKLYN HEIGHTS, Appellee.

[Cite as *Culkar v. Brooklyn Hts.*, 192 Ohio App.3d 383, 2011-Ohio-724.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 94968.

Decided Feb. 17, 2011.

384

Selker & Associates, Ltd., and Eugene I. Selker, for appellant.

Walter & Haverfield, L.L.P., R. Todd Hunt, and Aimee W. Lane, for appellee.

PATRICIA ANN BLACKMON, Presiding Judge.

{¶ 1} Appellant, Frank Culkar, appeals the trial court's judgment granting summary judgment in favor of appellee, the village of Brooklyn Heights. He assigns five errors for our review.[1]

{¶ 2} Having reviewed the record and relevant law, we affirm the trial court's decision. The apposite facts follow.

### Facts

{¶ 3} In 1973, Culkar purchased a parcel of land in the village located in the limited-industrial-zoned district. This land is a remnant parcel left over after the state of Ohio appropriated land in 1955 for the construction of an exit ramp from State Route 17. Immediately to the west of the property lies another parcel ("the west parcel") owned by Culkar, on which a single-family residential home is located. He uses the home as rental property. Both parcels had been zoned residential, but sometime prior to Culkar's purchasing the parcels, they were rezoned to limited industrial use. Most of the property located on the land is hillside; therefore, only .6 of the 1.7 acres is buildable land.

{¶ 4} The exit ramp, which is located on the south boundary of the property, leaves both of Culkar's parcels landlocked without frontage on a dedicated street. To resolve the problem, the state created an 11–foot–wide easement to provide access to the existing house off the dedicated street, Schaaf Road. The easement is located at the end of the ramp, creating an unsafe configuration for entering the property. A vehicle must make a 180–degree turn from the off-ramp onto the easement to enter the property. Culkar purchased the property with full knowledge of these limitations.

{¶ 5} Over the years, Culkar has attempted to build a ministorage facility on the property adjacent to the west property. In 1986, Culkar applied for a setback variance to permit the construction of a ministorage facility. The Zoning Board of Appeals ("ZBA") granted the variance with certain stipulations; however, the village council reversed the ZBA's decision. Several neighbors had raised concerns regarding the narrow driveway and the lack of frontage on a dedicated street, as well as concerns regarding the kind of materials that would be stored.

---

1. See appendix.

{¶ 6} In 1986, Culkar again applied for a variance from yard regulations, submitting plans similar to those he had originally submitted. The building inspector argued that Culkar's application failed to comply with several other provisions of the zoning code, including the requirements that only one main building is permitted on the property, there must be frontage on a dedicated street, and driveways and parking areas must be located 25 feet from any adjoining residential line. The ZBA also was concerned with the traffic hazard created by the exit ramp. Ultimately, the ZBA denied the variance. Culkar filed an appeal to the common pleas court, which reversed the ZBA's decision after concluding that the village ordinances were unconstitutional as applied to Culkar's property because they created practical difficulties. This court reversed the trial court's decision in *Culkar v. Brooklyn Hts.* (July 2, 1992), Cuyahoga App. No. 60883, 1992 WL 159790.

{¶ 7} In 1995, Culkar filed another similar building application, which the building inspector denied. The ZBA agreed with the building inspector that the application violated the code because the plan showed the construction of more than one building, because of the lack of frontage, and because it failed to address drainage issues. Culkar did not appeal this decision.

{¶ 8} In 1998, Culkar filed a complaint for declaratory judgment against the village, challenging the validity of the recently enacted rezoning of the property to residential use. The common pleas court granted the village's motion to dismiss because Culkar had failed to exhaust his administrative remedies. On appeal, we affirmed the dismissal, but concluded that the constitutional claims should have been dismissed without prejudice. *Culkar v. Brooklyn Hts.* (June 17, 1999), Cuyahoga App. No. 75366, 1999 WL 401367.

{¶ 9} In August 2000, Culkar filed another complaint for declaratory judgment regarding the rezoning of the property. Culkar agreed to dismiss this action after the village agreed that the property would remain zoned limited industrial. In exchange, Culkar agreed to release the village from all claims pertaining to the property.

{¶ 10} In April 2002, Culkar filed another application for a building permit to build a ministorage facility on the property and submitted a plan. This application is the subject of the instant appeal. The building inspector denied the application, and Culkar appealed to the ZBA. On August 14, 2002, a public hearing was conducted; Culkar submitted two new site plans, which varied slightly from the previous plan submitted to the building inspector in April 2002. The building inspector concluded that the new site plans failed to comply with the zoning code for the same reasons the April 2002 plan did, with the exception that off-street parking was resolved.

{¶ 11} At the hearing, Culkar's counsel, Eugene Selker, argued that because the new plans complied with the one-main-building, frontage, yard, off-street-parking, and landscaping/buffering zoning requirements, no variances were required for these items. Selker further requested a variance from the requirement in Section 1276.02(a)(8) that "warehouses" and "storage houses" be used to store only "new" material. He also requested a variance from the driveway regulations.

{¶ 12} The village law director entered several documents into the record from Culkar's prior lawsuits against the village regarding the property. One document included a traffic study prepared in 1989. The study concluded:

[T]he driveway entrance at the Schaaf Road/Granger Road off-ramp intersection is at an undesirable location from a safety standpoint. Current design practice for controlled access highways would not permit a driveway at the intersection of an off-ramp and a cross road. Sight distance for the off-ramp traffic at the intersection is restricted by the bridge railing. The driveway location adversely affects placement of the stop sign and painted stop line for the off-ramp at the intersection resulting in increased accidents.

Access to the proposed mini-storage facility is indirect. An eleven-foot wide, one land, 300+ foot long driveway is inadequate access to a commercial facility. Single unit truck design vehicles cannot make the 'U' turn into the driveway from the Granger Road off ramp. Vehicles entering the driveway from Schaaf Road must turn across the end of the one-way exit ramp. Additional vehicles entering and exiting the driveway due to the proposed mini-storage facility increases the potential for accidents at the intersection.

{¶ 13} The village's police chief testified that the intersection has become more obstructed since the 1989 study and the view more restricted. New housing developments have increased the traffic. He also testified that a van would not be able to turn into the facility from the off-ramp. The village engineer also testified that a truck could not make the turn from the off-ramp.

{¶ 14} Christopher Christian, the owner of the residentially zoned property next to Culkar's west parcel, stated that the driveway for the property runs across the front of his property. He stated that he has difficulty entering his own driveway because cars exiting the off-ramp have to pull up to the west corner of his driveway to see beyond the bridge on Schaaf Road.

{¶ 15} After considering the evidence and testimony presented, the ZBA upheld the building inspector's denial of the building permit and denied Culkar's request for a use variance. Culkar appealed the ZBA's decision to the court of common pleas and also filed a complaint for declaratory judgment, seeking a declaration that Section 1276.02(a)(8) of the village's zoning code was unconstitutional. On February 6, 2004, the trial court granted summary judgment in favor

of the village, and Culkar appealed to this court. We dismissed the appeal for lack of a final, appealable order because the trial court did not expressly declare the rights and obligations of the parties as required in a declaratory-judgment action and we could not determine whether the judgment also applied to the administrative appeal. *Culkar v. Brooklyn Hts.*, Cuyahoga App. No. 84276, 2004-Ohio-5392, 2004 WL 2252056.

{¶ 16} Inexplicably, Culkar did not request the trial court to enter a final judgment until a request for a status conference was filed on February 25, 2009. The court reinstated the case to the active docket and set the matter for hearing for the presentation of additional evidence.[2] Pending the hearing, the village filed a renewed motion for summary judgment.

{¶ 17} On February 17, 2010, an evidentiary hearing was conducted. Culkar and the village each presented one expert to testify regarding the characteristics of the property and whether variances were required. The trial court granted summary judgment in favor of the village. It concluded that the 2001 settlement agreement barred Culkar's claim that the ordinance was unconstitutional and that the ZBA's decision denying Culkar's permit and use variance was not unconstitutional, illegal, arbitrary, capricious, or unreasonable, and was supported by the preponderance of substantial, reliable, and probative evidence.

### Declaratory Judgment

{¶ 18} In his first and second assigned errors, Culkar argues that the trial court erred by concluding that res judicata prevented his complaint for declaratory judgment. In his complaint for declaratory judgment, Culkar challenged the constitutionality of Section 1276.02(a)(8) of the village's zoning code, which permits "warehouses" and "storage houses" as a main use in the limited industrial district if the material to be stored is "new" material.

{¶ 19} Although the trial court incorrectly stated that the same ordinance was the subject of prior disputes, res judicata still applies. The 2001 settlement agreement provided that Culkar agreed to release the village

from any and all claims that he has or may have against the Village from the beginning of time to the date of this Settlement Agreement, including any and all claims concerning the proper zoning of the property and any other claims concerning the Property whatsoever, and including any and all constitutional claims, statutory claims, or common law claims, *including any and all claims*

---

2. This hearing was unnecessary because the trial court had already found in favor of the village, and our remand only required the court to correct its journal entry. However, the hearing was harmless given that the experts merely reiterated what they had stated in their expert reports that were filed with the court as attachments to the prior summary-judgment motions.

*raised, or which could have been raised by Plaintiff, in the Litigation* and including attorney fees.

(Emphasis added.)   Settlement agreement, paragraph 5.

{¶ 20} An agreed judgment entry was signed by the parties and approved by the court providing that the parties had entered into a settlement agreement and that the case was settled and dismissed with prejudice.

{¶ 21} Based on the language of the settlement agreement, Culkar has waived his declaratory-judgment claim because he is prohibited from pursuing any claims he had or might have had as of the date of the settlement agreement regarding the zoning of the property, any constitutional claims, and any claims that were raised or could have been raised as to the property.

{¶ 22} The provision Culkar is contending is unconstitutional existed in the ordinances with the identical language at the time the settlement agreement was entered.   Culkar contends that at the time of the settlement agreement, the property was zoned residential.   However, that was a recent change, and his previous administrative appeals had dealt with the property as zoned for limited industrial use.   A copy of the village's zoning ordinance attached to the village's motion for summary judgment shows that in 1994, storage facilities in limited-industrial areas were permitted to store only "new" materials.   Thus, Culkar could have raised this issue prior to the settlement agreement being entered.   In fact, in paragraph four of his prayer for relief in the 2000 complaint, he stated, "Defendant VBH is restrained and enjoined from denying the development of Plaintiff Culkar's property pursuant to the uses contemplated under the classification of 'limited industrial' pursuant to the Codified Ordinances of the Village of Brooklyn Heights."

{¶ 23} Although Culkar argues that a declaratory-judgment action cannot be barred by res judicata, he misreads the law.   The law is that a declaratory judgment cannot be used to later bar actions not the subject of the declaratory judgment.   *Jamestown Village Condominium Owners Assn. v. Market Media Research, Inc.* (1994), 96 Ohio App.3d 678, 685–687, 645 N.E.2d 1265; *State ex rel. Shemo v. Mayfield Hts.* (2002), 95 Ohio St.3d 59, 765 N.E.2d 345. Certainly, a settlement agreement can bar a future declaratory-judgment action. *State ex rel. Republic Servs. of Ohio II, L.L.C. v. Pike Twp. Bd. of Trustees,* 5th Dist. No. 2007CA00344, 2009-Ohio-172, 2009 WL 106652; *Beaver Excavating Co. v. Bd. of Perry Twp. Trustees* (Dec. 31, 1990), 5th Dist. No. CA–8220, 1990 WL 237470.

{¶ 24} In so holding, we are aware that the settlement agreement resulted in the dismissal of a declaratory-judgment action;  however, the terms of the settlement agreement were not restricted to the issues contained in the declarato-

ry-judgment action. Moreover, as we stated, the declaratory complaint did request the court to enjoin the village from preventing his development of the property based on the uses contained in the code for limited industrial areas. Thus, we conclude that res judicata bars Culkar's complaint for declaratory judgment. Culkar's first and second assigned errors are overruled.

## Administrative Appeal

{¶ 25} In his third, fourth, and fifth assigned errors, Culkar argues that the trial court erred by concluding that variances were needed to comply with the village's zoning code and denying his use variance.

■■ {¶ 26} "A zoning board or planning commission which is given the power to grant variances is vested with a wide discretion with which the courts will not interfere unless that discretion is abused." *Schomaeker v. First Natl. Bank of Ottawa* (1981), 66 Ohio St.2d 304, 309, 20 O.O.3d 285, 421 N.E.2d 530. Whether extraordinary circumstances exist to justify the issuance of a variance is a question of fact to be determined by the zoning board or commission. Id.

{¶ 27} In *Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 735 N.E.2d 433, the Ohio Supreme Court distinguished the standard of review to be applied by common pleas courts and appellate courts in R.C. Chapter 2506 administrative appeals. The court stated:

> The common pleas court considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. * * *

> The standard of review to be applied by the court of appeals in an R.C. 2506.04 appeal is "more limited in scope." *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 465 N.E.2d 848. "This statute grants a more limited power to the court of appeals to review the judgment of the common pleas court only on 'questions of law,' which does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court." Id. at fn. 4 "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." *Lorain City School*

*Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264.

(Emphasis omitted.) *Henley* at 147.

{¶ 28} Culkar argues that no variances are needed because his plan complies with the requirements of the zoning code. The village admitted that the new building plans resolved the problem with the off-street-parking requirement and the one-main-building requirement; therefore, the court erred in concluding that a variance was needed for these items. This error is not reversible because the ZBA determined, and the trial court agreed, that Culkar failed to meet other requirements of the zoning code.

{¶ 29} Section 1276.04(b) requires property frontage to be on a dedicated street. Here, the property's frontage does not have a dedicated street because it fronts the one-way off-ramp and is landlocked except for the easement that originates off Schaaf Road. The easement is not a dedicated street, and given the fact that it is 11 feet wide, and at the time it was constructed, its purpose was to give access to the residential home on Culkar's property, it would not accommodate a commercial use, especially given the safety concerns regarding the turn into the driveway. The driveway is also not wide enough to permit two vehicles to pass each other.

{¶ 30} The safety of the turn from the exit ramp has been a constant concern throughout the history of this litigation. As the ZBA members all noted, a small truck or van would not be able to make the hairpin turn without backing onto Schaaf Road. These are most likely the types of vehicles that would be using the storage units. While Culkar argued that he could contractually agree with his clients that such vehicles are not permitted, as the police chief noted, it would be hard for the village to enforce a private contract. Moreover, as the police chief stated, traffic has increased on Schaaf Road since the 1989 traffic-safety study because it is used as an alternative to Granger Road and 60 new homes have been added to the area.

{¶ 31} Culkar argues that based on the village's objection, the driveway would never be safe for any use. However, during the over 20 years of litigation, he has never proposed any use other than a ministorage facility. Thus, we are not convinced that any other proposed uses would be prohibited. As the village's expert stated, a residential use would be appropriate, as would a building for a contractor who leaves the premises to do work. Although these uses would still require the use of the unsafe turn, most of the people having to make the turn would be accustomed to the unusual turn and narrow driveway from using it routinely.

{¶ 32} The evidence also indicated that Culkar's property does not comply with the 50–foot–front–yard–setback requirement. Even though Culkar's property constitutes the second adjacent lot from the residentially-zoned neighbor's lot, thus requiring only a 40–foot setback, he has only a 30–foot setback. Culkar did not apply for a variance as to the setback because he claimed that he complied with the setback requirements.

{¶ 33} The code requires landscape buffering, and if the property line abuts a residential property line, a fence is required. Culkar's property abuts a residential property line at the rear of his property, so a fence would be required. Culkar has not applied for a variance regarding the fence; thus, even if the village's expert opined that a variance would be reasonable given the thick vegetation at the back of the property, Culkar must still request the variance. However, in light of the problem concerning the safety of turning onto the property from the exit ramp, Culkar's failure to obtain these variances is a moot point.

{¶ 34} The ZBA also denied Culkar's use variance. He requested a use variance because the code allows limited industrial areas to store only "new" materials, and he wanted to allow customers to store both old and new materials. A use variance authorizes land to be used for "purposes other than those permitted in the [zoning] district as prescribed in the relevant regulation." *Schomaeker*, 66 Ohio St.2d at 306, 20 O.O.3d 285, 421 N.E.2d 530.

{¶ 35} A board of zoning appeals maintains wide latitude in deciding whether to grant or deny a variance. Id. In making its determination to grant or deny a variance, the board of zoning appeals must determine whether enforcement of the resolution will cause the property owner an unnecessary hardship. *Set Prods., Inc. v. Bainbridge Twp. Bd. of Zoning Appeals* (1987), 31 Ohio St.3d 260, 263, 31 OBR 463, 510 N.E.2d 373. "Unnecessary hardship" results when it is not economically feasible to put the property to a permitted use under its present zoning classification due to characteristics unique to the property. *Hulligan v. Bd. of Zoning Appeals* (1978), 59 Ohio App.2d 105, 109, 13 O.O.3d 162, 392 N.E.2d 1272, quoting *Fox v. Johnson* (1971), 28 Ohio App.2d 175, 181, 57 O.O.2d 234, 275 N.E.2d 637. However, merely stating that the land would be more valuable with the variance, or less valuable without it, does not amount to a sufficient "hardship." Id. Rather, evidence must be presented to show that the property is unsuitable to any of the permitted uses as zoned. See *Cole v. Bd. of Zoning Appeals* (1973), 39 Ohio App.2d 177, 183–184, 68 O.O.2d 363, 317 N.E.2d 65.

{¶ 36} Here, because Culkar has never attempted to use the property for any of the other listed uses for limited industrial property, he has failed to prove that

the ZBA's refusal to release him from the "new materials" restriction is an undue hardship. Moreover, the village explained that the reason that "new" material is necessary for the safety of surrounding residents is because new materials have packaging and labeling standards to promote safe storage. The village's expert also stated that industrial storage warehousing has fire codes that would allow the village to perform inspections and ensure that certain safety criteria are met. There are no such protections for a ministorage facility. The "new material" requirement also would prohibit the establishment of indoor junkyards.

{¶ 37} Based on our limited scope of review and the deference we must afford the ZBA in its fact-finding role, we find no merit to Culkar's assigned errors. Accordingly, his third, fourth, and fifth assigned errors are overruled.

Judgment affirmed.

BOYLE and COONEY, JJ., concur.

APPENDIX

Assignments of Error

{¶ 38} "I. It was error for the trial court to grant Defendant–Appellees' renewed motion for summary judgment, barring Plaintiff–Appellant's declaratory judgment action to declare as unconstitutional the Village's zoning law Sec. 1276.02(a)(8) which permits warehouses that store only new material.

{¶ 39} "II. The trial court erred when it failed to hold that the Village's zoning law, Sec. 1276.02(a)(8), permitting warehouses in a Limited Industrial District that store only new material, is arbitrary, unreasonable, and without substantial relation to the public health, safety, morals, or general welfare and is unconstitutional facially and/or as applied to the Plaintiff–Appellant's property.

{¶ 40} "III. It was error for the trial court to affirm the decision of the Defendant–Appellee Zoning Board of Appeals, which decision denied the relief and variance requests of Plaintiff-appellant.

{¶ 41} "IV. The trial court erred in failing to find that the decision of the Zoning Board of Appeals was arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence."

{¶ 42} "V. The trial court erred and abused its discretion in failing to modify the action of the Zoning Board of Appeals and failing to order that all Plaintiff–Appellant's non-use or area variance requests should be granted; or alternatively that some or all of those items did not require any variance at all."